A. R. Scalise Company, Petitioner v. Commonwealth of Pennsylvania, Pennsylvania Prevailing Wage Appeals Board, Department of Labor and Industry, Respondent.

Argued September 12, '1978, before President Judge Bowman and Judges Wilkinson, Jr., Mencer, Rogers, Blatt, DiSalle and MacPhail. Judges Crumlish, Jr. and Craig did not participate.

*Timothy P. O'Reilly,* for petitioner.

*William G. Dade,* Assistant Attorney General, with him *Charles S. Solit,* General Counsel, for respondents.

Opinion by Judge Blatt, November 21, 1978:

A. R. Scalise Company (Scalise) appeals from a decision of the Pennsylvania Prevailing Wage Appeals Board (Board) which affirmed a determination by the Secretary of Labor and Industry (Secretary) that Scalise had failed to pay the prevailing wage to certain of its workmen and ordered it to compensate them for the amount of underpayment.

In early 1974 Scalise bid on a contract for heat and ventilation work on a public works project for the West Mifflin Area School District (School District). Although the Instructions to Bidders provided that the Pennsylvania Prevailing Wage Act[1] (Act) was applicable to the contract, the specifications for the contract did not contain the then prevailing minimum wage rates. Scalise was the successful bidder and in June of 1974 he signed a contract which provided that if by mistake or otherwise a provision that was required by law to be part of the contract had not been inserted, "then upon the application of either party, the contract shall forthwith be physically amended to make such insertion."

Scalise subsequently began work on the project and in the last week of July of 1974, a Prevailing Wage Inspector Supervisor received a telephone call from a business agent of a steamfitter's union who alleged that the prevailing wage rates were not being paid to Scalise's workmen. As a result, the supervisor called the architect of the project who told him that the prevailing minimum wage rates had not been requested by the School District. On August 2, 1974, the architect requested the Secretary to determine the prevailing wage rates to be paid to the workmen employed on the project, and these were then sent to the architect who forwarded them to Mr. Scalise, the proprietor of Scalise, on August 13, 1974. On September 3, 1974, a Prevailing Wage Inspector visited the project and found that the rates were not posted as required by the Act. He also spoke with two workmen who indicated that they were being paid less than the minimum wage rates. When the inspector asked why these wages were not posted, the workmen referred him to a Mr. Davis

_____
[1] Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §165-1 et seq.

who then produced a document from his truck which listed this rate and said he would post it. The inspector revisited the project on two subsequent occasions and found the wages properly posted. On October 29, 1974 the inspector gave Mr. Scalise, Jr., Mr. Scalise's son, audit sheets requesting information as to each workmen's hours and wages. The sheets were returned by Mr. Scalise, Jr., but the inspector was informed by the workmen that the hours listed on the sheets were not correct. As a result, the workmen then sent notarized letters to the inspector indicating the correct information. After another unsuccessful attempt to obtain payroll records from Scalise, the inspector and a Prevailing Wage Inspector Supervisor met with all of the workmen to obtain information concerning their hours, classifications and wages.

The inspector finally did secure the payroll records from Mr. Scalise on January 6, 1976. The supervisor then sent a summary sheet, showing the amount of underpayment of wages, to Scalise's attorney. Scalise requested a hearing, following which the hearing officer made findings of fact, conclusions of law and a recommendation that Scalise be found to have committed an unintentional violation of the Act. The Secretary adopted the hearing officer's findings that Scalise had committed an *unintentional* violation. The Secretary did not, however, afford Scalise a reasonable opportunity to pay the difference between the wage rate it had paid and the then existing prevailing wage rate; instead he issued an immediate compliance order. On appeal, the Board affirmed the order of the Secretary and this appeal followed.

Section 44 of the Administrative Agency Law,[2] 71 P.S. §1710.44, limits our scope of review to a determi-

---

[2] Act of June 4, 1945, P.L. 1388, *as amended,* §1710.1 et seq.

nation as to whether or not the findings of fact are supported by substantial evidence, whether or not an error of law was committed, or whether or not the appellants' constitutional rights were violated.

Scalise contends that it should be absolved from its duty to pay the prevailing minimum wage to its workmen because the School District failed to include such rates in the contract specifications. We find this argument, however, to be without merit. While the School District may have violated Section 4 of the Act[3] by not including the rates in the specifications, the duty of the contractor under Section 5 of the Act[4] to pay the prevailing wages is not contingent upon the School District's fulfillment of its duties under Section 4. Moreover, the contract entered into by Scalise and the School District specifically provided that the Act was applicable to the contract and provided for the insertion of any provision, which was required by law to be a part of the contract but not originally included. Thus the provisions of the Act were clearly made part of the contract and were binding upon Scalise.

[3] Section 4 of the Act, 43 P.S. §165-4, provides:

It shall be the duty of every public body which proposes the making of a contract for any project of public work to determine from the secretary the prevailing minimum wage rates which shall be paid by the contractor to the workmen upon such project. Reference to such prevailing minimum rates shall be published in the notice issued for the purpose of securing bids for such projects of public work. Whenever any contract for a project of public work is entered into, the prevailing minimum wages as determined by the secretary shall be incorporated into and made a part of such contract and shall not be altered during the period such contract is in force.

[4] Section 5 of the Act, 43 P.S. §165-5, provides:

Not less than the prevailing minimum wages as determined hereunder shall be paid to all workmen employed on public work.

Scalise further argues that the Secretary exceeded his authority in investigating the matter because he had not received complaints from the workmen. This Court's decision in *Pennsylvania Prevailing Wage Appeals Board v. Steve Black, Inc.*, 27 Pa. Commonwealth Ct. 21, 365 A.2d 685 (1976), however, renders this argument also without merit. In that case, we held "that the Secretary is empowered to supervise compliance with the Act by authorizing . . . 'routine checkups' at job sites and to audit payroll records independently to determine whether or not a contractor has failed to pay the minimum wage rates." 27 Pa. Commonwealth Ct. at 26, 365 A.2d at 688. Certainly if the Secretary has the power to initiate routine investigations, without cause to suspect any violation of the Act, it is beyond reason to conclude that he is without power to investigate when he receives information alleging that the Act has been violated.

It is also argued by Scalise, however, and we must agree, that the Scalise employee identified here as Mr. Davis was not a workman and therefore was not covered by the Act. The Hearing Examiner found that Davis was a "working foreman" who "used the tools of the trade" and therefore should be classified as a "workman" as that term is defined by the Act.[5] The record shows, however, that Mr. Davis gave work as-

---

[5] Section 2 of the Act, 43 P.S. §165-2 provides in pertinent part:
As used in this act—

. . . .

(7) 'Workman' includes laborer, mechanic, skilled and semi-skilled laborer and apprentices employed by any contractor or subcontractor and engaged in the performance of services directly upon the public work project, regardless of whether their work becomes a component part thereof, but does not include material suppliers or their employes who do not perform services at the job site. (Footnote omitted.)

signments, accepted construction material and exercised his independent judgment to see that the work was done properly. Under these circumstances, we believe that he was a supervisor on the project acting as an agent of Scalise and was not a "workman" subject to the prevailing-wage provisions of the Act.

As to the finding that Scalise was an unintentional violator of the Act, Scalise does not argue that this was unsupported by the evidence nor that it was not in accordance with law. We believe therefore that he was correctly held to have committed an unintentional violation. However, in *All-Weld, Inc. v. Department of Labor and Industry,* 34 Pa. Commonwealth Ct. 482, 383 A.2d 982 (1978), we held that in the case of an *unintentional* violation, the Secretary must first afford the contractor a reasonable opportunity to make payments to the workmen before he seeks to recover any underpayment. Section 11(h)(2) of the Act, 43 P.S. §165-11(h)(2) provides that the Secretary has substantial evidence of *intentional* failure to pay prevailing wage rates and the Authority then to seek compliance only after (1) there has been a proper finding of underpayment, (2) the employer is given an opportunity to rectify the matter, and (3) there is a subsequent failure of such person or firm to comply with any opportunity to adjust any difference which shall be afforded him by the Secretary. Because, therefore, Scalise was not provided an opportunity to make restitution for the underpayments before a compliance order was issued, we must reverse that portion of the Board's adjudication which affirmed the Secretary's order to Scalise to compensate the workmen for the amount of underpayment. Scalise must be given a reasonable opportunity to make the determined underpayments before the Secretary takes any action to require payment of the wages owed.

ORDER

AND Now, this 21st day of November, 1978, that part of the adjudication of the Pennsylvania Prevailing Wage Appeals Board finding A. R. Scalise Company to be an unintentional violator of the Pennsylvania Prevailing Wage Act is hereby affirmed, but that part finding that Mr. Davis was a workman covered by the Act and that part affirming the order of the Secretary of Labor and Industry directing payment of the wages determined due to the workmen concerned are hereby reversed. The Secretary is ordered to allow the A. R. Scalise Company a reasonable opportunity to make payment to its workmen in the amount determined by the Secretary to be owing before taking any further action to require payment of such wages.