William Gosewisch and Theresa M. Gosewisch, Appellants *v.* Commonwealth of Pennsylvania, Department of Revenue, Appellee.

566

Argued December 6, 1978, before President Judge BOWMAN and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, DISALLE and MACPHAIL. Judges CRUMLISH, JR. and CRAIG did not participate.

*Paul S. Kimbol*, with him *P. J. DiQuinzio*, and *Dechert, Price & Rhoads*, for appellants.

*R. Scott Shearer*, Deputy Attorney General, for appellee.

OPINION BY JUDGE ROGERS, February 26, 1979:

William Gosewisch and Theresa M. Gosewisch, his wife, have filed a petition for review of the action of

the Board of Finance and Revenue sustaining an additional assessment of $153.41, with interest, but without penalty, on account of their Pennsylvania Personal Income Tax for 1973, and refusing their application for a refund in the amount of $1355.30.

The parties have filed a stipulation of facts from which we have culled the following as our findings:

1. William and Theresa M. Gosewisch (hereinafter referred to as 'Appellants') are husband and wife and reside at 6004 Musket Road, Fort Washington, Pennsylvania 19034.

2. Appellants are on the cash basis of accounting for Pennsylvania Personal Income Tax purposes.

3. Appellants' duly and timely filed a Pennsylvania Personal Income Tax Return for the taxable year 1973. Appellants reported taxable income for 1973 of $56,191.99, a tax due of $1,-292.42, taxes withheld $2,320.96, and claimed a refund of $1,028.54. . . .

4. In 1973, Appellant William Gosewisch (hereinafter 'Taxpayer') received $65,596.36 as a lump sum distribution from the H. B. Frazer Company, Inc. Profit Sharing Trust. . . . Of that amount, $51,389.76 had accrued to Taxpayer's profit sharing plan account prior to June 1, 1971 and $14,206.60 had accrued to his profit sharing plan account after June 1, 1971. On their 1973 Personal Income Tax return Appellants reported as taxable compensation only the amount accrued after June 1, 1971, along with the amount of $24,000.08 received as salary as evidenced by the W-2 issued Taxpayer, producing a reported taxable compensation of $38,207.09.

5. The Personal Income Tax Bureau determined that Appellants' total taxable income for 1973 was $107,580.00. The Bureau determined

that the $51,388.00 accrued to Taxpayer's profit-sharing plan account prior to June 1, 1971 and distributed to Taxpayer in 1973 by the H. B. Frazer Company, Inc. Profit Sharing Trust was taxable as compensation. As a result of this adjustment, the Bureau determined that Appellants' 1973 personal income tax was $2,474.37, applied the credit of $2,320.96 for tax withheld, and determined that a deficiency of $153.41 was still owed by Appellants.

. . . .

7.    On April 15, 1975, the Appellants filed a timely Petition for Reassessment in which they claimed that their correct 1973 Pennsylvania Personal Income Tax liability is $965.66 and that they were entitled to a refund of $1,355.30. By decision mailed October 15, 1975 the Personal Income Tax Board of Reassessment sustained the assessment in its entirety.

8.    On November 12, 1975, Appellants filed a Petition for Review with the Board of Finance and Revenue. By Order dated January 28, 1976, the Board of Finance and Revenue sustained the assessment, but abated the penalties.

9.    Prior to 1973, Taxpayer was employed by H. B. Frazer and Company, Inc. and was a participant in the H. B. Frazer Company, Inc. Profit Sharing Plan (hereinafter 'Plan'). . . .

10.    The Plan created a Fund designed to provide certain benefits for eligible employees (hereinafter 'Members') of H. B. Frazer Company, Inc. Contributions under the Plan and earnings on those contributions are allocated annually as of each December 31, to the Member's account. Any member of the Plan who had a vested interest in the Fund as provided by the Plan had a legally enforceable right to

the money or other property in his account upon the occurrence of certain specified events, one or more of which was certain to occur. None of these specified events occurred relative to the Taxpayer until 1972. No benefit payable under the Plan was subject, in any manner, to anticipation, assignment or pledge.

11. All of the contributions to said Plan consisted of contributions by the employer (H. B. Frazer Company, Inc.). The members of the Plan, including the instant Taxpayer, made no contributions into the Plan.

. . . .

15. On April 16, 1970, Section 6.2 of the Plan was amended to read as follows:

6.2 'TERMINATION OF EMPLOYMENT'. Upon the termination of employment of a member for reasons other than death or disability, he shall be entitled to receive the full amount standing to his credit in the Fund. Payment of such amount shall be made in ten equal annual installments commencing with the month following the termination of his employment; provided, however, that the Committee may at any time elect to have paid in one lump sum the amount then standing to his credit in the Fund.

16. As of December 31, 1970, the balance in Taxpayer's Plan account was $51,398.76. Thereafter, $14,206 was credited to his Plan account as of December 31, 1971. This latter sum consisted of Taxpayer's share of the contribution made to the plan by H. B. Frazer Company, Inc. for 1971 and his share of the Plan's income and appreciation for the year 1971.

17. In 1972, Taxpayer terminated his employment with H. B. Frazer Company, Inc.

18. In 1973, Taxpayer received $65,596.36 from the Girard Trust Bank, the trustee of the Profit Sharing Trust established pursuant to the Plan. Upon receipt of this sum, Taxpayer ceased to be a Member of the Plan and relinquished all of his right, title and interest in the Plan.

As the findings suggest, Mr. and Mrs. Gosewisch reported the gross amount of the total distribution to Mr. Gosewisch from the Profit Sharing Trust in the amount of $65,596.36 on their 1973 Pennsylvania Personal Income Tax Return but deducted from that amount the sum of $51,389.76, the amount credited to his account as of December 31, 1970, the date his account became totally non-forfeitable and a date prior to June 1, 1971, the effective date of the Pennsylvania Personal Income Tax.[1] They reported and paid tax on the difference between the total distribution of $65,596.36 and the amount of $51,389.76, or $14,207.01; this last figure being the sum of the 1971 appreciation in the value of Mr. Gosewisch's interest credited to his account as of December 31, 1971 and of the 1971 employer contributions to his account also credited December 31, 1971.

The Commonwealth's position, upheld by the Board of Finance and Revenue, is that the total distribution in the amount of $65,596.36 was compensation received by Mr. Gosewisch in 1973 and all taxable in that year. It is the position of Mr. and Mrs. Gosewisch that Mr. Gosewisch's interest in the Profit Sharing Trust was, from the moment it became 100% non-forfeitable, intangible personal property, which in 1973, when his

---

[1] Article III of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, added by Act of August 31, 1971, P.L. 362, *as amended*, 72 P.S. §7301 et seq.

employment terminated, he exchanged with the trustees for cash; and that only the difference between the amount he received, $65,596.36, and the "fair market value of his property interest in his account on June 1, 1971," $51,389.76, that is, $14,207.01,[2] was taxable as a capital gain.[3]

In our opinion, the 1973 distribution to Mr. Gosewisch from the Profit Sharing Trust was compensation within the meaning of Section 303(a)(1) of the Code, 72 P.S. §7303(a)(1), which provides:

> Compensation. All salaries, wages, commissions, bonuses and incentive payments whether based on profits or otherwise, fees, tips and similar remuneration received for services rendered whether directly or through an agent and whether in cash or in property except income derived from the United States Government for active duty outside the Commonwealth of Pennsylvania as a member of its armed forces.

and that no part of it represented a net gain or income from disposition of property within the meaning of Section 303(a)(3) of the Code, 72 P.S. §7303(a)(3), which provides:

> Net gains or income from disposition of property. Net gains or net income, less net losses, derived from the sale, exchange or other disposition of property, including real or personal, whether tangible or intangible as determined in accordance with accepted accounting

---

[2] As appears, there is a tiny and inconsequential discrepancy in the figures. These occur in several places in the taxpayers' return.

[3] In fact, the taxpayers did not report the asserted gain on Schedule D, "Sale or Exchange of Property" but rather reported it as compensation. The claim for refund is based on the fact that capital losses which were reported on Schedule D would have entirely offset the now asserted gain in the amount of $14,207.01.

principles and practices. For the purpose of this act, for the determination of the basis of any property, real or personal, if acquired prior to June 1, 1971, the date of acquisition shall be adjusted to June 1, 1971 as if the property had been acquired on that date. If the property was acquired after June 1, 1971, the actual date of acquisition shall be used in determination of the basis.

The term compensation is defined in Section 301 of the Code, 72 P.S. §7301(d), as follows:

'Compensation' means and shall include salaries, wages, commissions, bonuses and incentive payments whether based on profits or otherwise, fees, tips and similar remuneration received for services rendered, whether directly or through an agent, and whether in cash or in property.

The term 'compensation' shall not mean or include: (i) periodic payments for sickness and disability other than regular wages received during a period of sickness or disability; or (ii) disability, retirement or other payments arising under workmen's compensation acts, occupational disease acts and similar legislation by any government; or (iii) payments commonly recognized as old age or retirement benefits paid to persons retired from service after reaching a specific age or after a stated period of employment; or (iv) payments commonly known as public assistance, or unemployment compensation payments by any governmental agency; or (v) payments to reimburse actual expenses; or (vi) payments made by employers or labor unions for programs covering hospitalization, sickness, disability or death, supplemental unemployment benefits, strike benefits, social se-

curity and retirement; or (vii) any compensation received by United States servicemen serving in a combat zone.

Section 354 of the Code[4] empowers the Department of Revenue to adopt rules and regulations with respect to anything pertaining to the administration, enforcement and the collection of the Personal Income Tax. The Department has adopted comprehensive regulations which appear at 2 Pa. B. 259. Regulation Section 301(d)-2(c), at 2 Pa. B. 261, provides:

Compensation Shall Not Mean or Include:

. . . .

Payments commonly recognized as old age or retirement benefits paid to persons retired from service after reaching a specified age or after a stated period of employment. *Retirement pay* includes a distribution of a lump sum upon retirement, but *does not include a severance payment by an employer to an employee who terminates employment without retiring. A payment of the latter type shall be considered compensation, if paid upon termination of employment, rather than as a retirement income, to the extent that the payment exceeds the employee's contribution to any plan out of which such payment may be made.* (Emphasis supplied.)

Since the distribution made to Mr. Gosewisch from the Profit Sharing Trust was remuneration received for services rendered and since it was a severance, not a retirement benefit, it was compensation as defined in the Code and the regulations just quoted.

Furthermore, assuming that Mr. Gosewisch could be said to have had a property interest in his account with the Profit Sharing Trust, we cannot agree that

---

[4] 72 P.S. §7354.

the payment of money to Mr. Gosewisch from the Profit Sharing Trust on the occasion of his termination represented a sale, exchange or disposition of personal property. The words sale, exchange and disposition denote a transfer. *Commonwealth v. Scott Paper Co.*, 425 Pa. 444, 228 A.2d 904 (1967). The payment to Mr. Gosewisch by the trustees of the sum due him required to be made by the event of his termination from employment was no transfer.

Nor is there merit in the taxpayers' argument that even if the distribution from the Profit Sharing Trust was compensation, the amount which had been credited to Mr. Gosewisch's account prior to the effective date of the Code, June 1, 1971, is not taxable under Section 361, 72 P.S. §7361. Section 361 provides: ''Except as hereinafter provided this article [Article III—Personal Income Tax] shall take effect immediately, except the tax shall first apply and be imposed upon income received by or accrued to a taxpayer on or after June 1, 1971. . . .'' Since the taxpayers are on a cash, not accrual, basis of accounting the phrase ''received by'' applies.

Section 301(q) of the Code, 72 P.S. §7301(q) defines the word received:

'Received' for the purpose of computation of income subject to tax under this article means 'received, earned or acquired' and the phrase 'received, earned or acquired' shall be construed according to the method of accounting required by the department under this article for computing and reporting income subject to the tax.

Department Regulation, §301(q)-1, 2 Pa. B. 263 provides:

a. *General Rule.* An amount, the privilege of receiving which is taxable, shall be considered as received in the year in which it is actually or constructively received unless includa-

ble for a different year in accordance with the taxpayer's method of accounting. . . . Under the cash receipts and disbursements method of accounting, such an amount is includable in gross income when actually or constructively received.

It is undisputed that Mr. Gosewisch actually received the $65,596.36 distribution from the Profit Sharing Trust in 1973. Therefore, unless the taxpayers can demonstrate that a portion of the distribution was constructively received prior to June 1, 1971, the entire amount is taxable.

Department Regulation §301(q)-2, 2 Pa. B. 263, describes constructive receipt

> a. *General Rule.* Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time. *However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions.* (Emphasis supplied.)

Department Regulation §301(q)-2 was taken verbatim from Treas. Reg. §1.451-2(a) promulgated under the United States Internal Revenue Code, and we therefore seek guidance from treasury department rulings and federal case law interpreting the application of the constructive receipt doctrine to payments from profit sharing trusts. In *Drysdale v. Commissioner of Internal Revenue,* 277 F.2d 413 (6th Cir. 1960), the court held, under facts similar to those in this case, that payments to a trust for the benefit of taxpayer were not constructively received by the taxpayer when made because he had no legal right to require payment from the trust until taxpayer reached the age of sixty-five, died, or retired from full-time activity. *See*

*also* Rev. Rul. 60-31, 1960-1 C.B. 174. The contingencies in the instant Profit Sharing Trust—termination, disability and death—were of course substantial limitations on Mr. Gosewisch's right to receive payment of benefits and hence there was no constructive receipt of payments prior to the actual payment in 1973.

Our decision that Section 361 of the Code does not prohibit taxation of amounts credited to Mr. Gosewisch's account before June 1, 1971 does not create the problems of invalid retroactivity and lack of uniformity claimed by appellants. Since the payment of compensation was received in 1973, the tax imposed on the privilege of receiving income was not imposed retroactively. With respect to uniformity, we observe that the Pennsylvania Personal Income Tax is applied at a uniform rate to the taxable event of the receipt of income. In *Amidon v. Kane,* 444 Pa. 38, 279 A.2d 53 (1971), the Supreme Court principally faulted that version of the personal income tax on the ground that taxpayers enjoying the same privilege of receiving, earning or otherwise acquiring the same amount of income as others were required to pay a larger dollar amount of taxes. Here, the appellants' tax burden is no different from that of any other person receiving the same amount of income in the same circumstances.

## ORDER

AND Now, this 26th day of February, 1979, it is ordered that William and Theresa M. Gosewisch's petition for review of their personal income tax for the year 1973 filed to docket No. 284 C.D. 1976 be and it is hereby dismissed. Unless exceptions are filed within thirty (30) days of the filing of this Order, as provided by law, judgment is hereby directed to be entered in favor of the Commonwealth and against William and Theresa M. Gosewisch in the amount of $153.41 together with interest and costs according to law.