LINDE ENTERPRISES, INC. and
Eric R. Linde, Petitioners,

v.

PREVAILING WAGE APPEALS
BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 1995.
Decided Feb. 23, 1996.
Publication Ordered May 16, 1996.

James P. Valentine, for petitioners.

Robert C. Scharnberger, Asst. Counsel, for Prevailing Wage Div.

Before COLINS, President Judge, SMITH, J., and KELTON, Senior Judge.

KELTON, Senior Judge.

## INTRODUCTION

Pursuant to Section 5 of the Pennsylvania Prevailing Wage Act (Act), all workmen employed on a "public work" project shall be paid "not less than the prevailing minimum wages." Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. § 165–5.[1] In this case,

---

1. The Legislature in Section 2(5) of the Act defines public work as:

    construction, reconstruction, demolition, alteration and/or repair work other than mainte-

nance work, done under contract and paid for in whole or in part out of the funds of a public body where the estimated cost of the total project is in excess of twenty-five thousand

after receiving an allegation that the contractor that had been awarded the contract for the 1989 Exeter Borough Sanitary Sewer Improvements Project ("Exeter Project") had violated the Act by failing to pay its workmen the prevailing minimum wage rates, the Acting Secretary of Labor and Industry (Secretary) investigated the charge and provided a hearing to the accused contractor in order to determine whether it had failed to pay the prevailing wages and, if so, whether that failure was intentional or otherwise. Section 11(c) of the Act, 43 P.S. § 165–11(c).[2]

### PROCEDURE

Linde Enterprises, Inc. and Eric R. Linde (collectively "Linde") petition for review of the January 13, 1995 order of the Department of Labor and Industry, Prevailing Wage Appeals Board (Board) affirming the Secretary's May 13, 1994 final determination wherein he ordered that 1) Linde be voluntarily permitted to adjust the amounts of unintentional underpayments it made to workmen in accordance with Section 11(d) of the Act;[3] 2) Linde provide satisfactory evidence to the Prevailing Wage Division within thirty days that it adjusted the underpayments; and 3) in the event that Linde fails to adjust the underpayments, the Department shall forthwith review this case to determine if further proceedings under Section 11(c) of the Act, intentional violation of the Act by failure to adjust underpayments, is warranted.

### FACTS

On June 6, 1989, when the Borough opened the bids for the Exeter project, Linde learned that it was the successful bidder at a contract price of $3,620,194.50. (Findings of Fact Nos. 3 and 6.) The parties formally executed a contract on April 13, 1990. (Finding of Fact No. 7; Petitioner's Exhibit 1, R.R. 335a.)

Each week, Linde filed payroll certifications with the Luzerne County Redevelopment Authority[4] using State Form LIPW–128 thereby certifying compliance with the Act. "The front side of the certification contained the serial number of the State Predetermination." (Finding of Fact No. 15.) Linde, however, "did not pay the effective-date increases set forth in the State Predetermination to its workmen on the Project … [, but instead,] paid the rates in effect at the time it started the Project for the duration thereof." (Finding of Fact No. 16.)

"In addition to not paying the effective-date increases," the Secretary found that Linde "did not pay the prevailing wage to two (2) individuals designated in its payroll certifications as foremen, Francis Crofton and Robert Impaglia." (Finding of Fact No. 18.) Thus, "[a]s a result of [Linde's] failure to pay workmen the effective date increases set forth in the Predetermination and as a result of misclassification of workmen in two instances," the Secretary found that Linde "underpaid their workmen a total of $20,944.44." (Finding of Fact No. 19.) The Secretary, however, found that Linde's underpayments were unintentional and gave Linde the opportunity to adjust voluntarily the amounts of unintentional underpayments it made to the workmen. (Finding of Fact No. 20.)

Linde appealed the Secretary's decision to the Board, which issued a final order affirming the Secretary on January 13, 1995. Linde then filed a timely appeal of the Board's order with this Court.

### ISSUES

■ The four issues before us for review are: 1) whether the Board erred in deter-

---

($25,000), but shall not include work performed under rehabilitation or manpower training program.
43 P.S. § 165–2(5).

**2.** The Secretary appointed Richard T. Kelley, Esq. as hearing examiner for purposes of conducting the hearing, presiding over the receipt of evidence and certifying the record to the Secretary for a decision. Hearing Examiner Kelley

held hearings in this matter on March 16 and June 29, 1992.

**3.** 43 P.S. § 165–11(d).

**4.** "The Project … was administered on behalf of the Borough by the Luzerne County Redevelopment Authority ("LCRA")." (Finding of Fact No. 5.)

mining that the Section 11(d) enforcement proceedings were not barred by a statute of limitations; 2) whether the Board erred in determining that the Predetermination was valid, despite the fact that the contract was not awarded within 120 days of the date the Predetermination was issued; 3) whether the Board erred in determining that Linde's challenge to the Predetermination in an enforcement proceeding was improper; and 4) whether the Board erred in finding that Impaglia and Crofton were workmen entitled to be paid prevailing wages under the Act.[5]

## DISCUSSION

### 1. Statute of Limitations:

■ Citing Sections 11(b), 11(c) and 13 of the Act, Linde argues that the Department's enforcement action was time barred:

(b) Any workman may, within three months from the date of the occurrence of the incident complained of, file a protest, in writing, with the secretary objecting to the amount of wages paid for the services performed by him on public work as being less than the prevailing wages for such services.

(c) Whenever a fiscal or financial officer of any public body shall notify the secretary that any person or firm required to pay its workmen the prevailing wage under this act has failed so to do, or whenever any workman employed upon public work shall have filed a timely protest objecting that he has been paid less than prevailing wages as required by this act, it shall be the duty of and the secretary shall forthwith investigate the matter and determine whether or not there has been a failure to pay the prevailing wages and

whether such failure was intentional or otherwise. . . .

43 P.S. § 165–11(b) and (c).

Any workman paid less than the rates specified in the contract shall have a right of action for the difference between the wage so paid and the wages stipulated in the contract, which right of action shall be instituted within six months from the occurrence of the event creating such right.

43 P.S. § 165–13.

In the sections of the Act relied upon by Linde, the Legislature unambiguously used the term "workman" when specifying applicable statutes of limitations. Given the absence of a statute of limitations in the Act for bringing enforcement actions, we simply decline to create one here by implication or by torturing existing statutory language.[6] Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a); *Crosby by Crosby v. Sultz*, 405 Pa. Super. 527, 541–42, 592 A.2d 1337, 1344–45 (1991). Any such creation is within the purview of the Legislature, which clearly demonstrated that it knew how to create statutes of limitations in this area of the law if it so desired.

In addition, although the issue of what, if any, statute of limitations was applicable to the Department in enforcement actions was not at issue in *All–Weld, Inc. v. Commonwealth of Pennsylvania, Department of Labor and Industry*, 34 Pa.Cmwlth. 482, 383 A.2d 982 (1978), we noted therein that the *Department* was not precluded by Section 11(b)'s three-month time period from instituting enforcement proceedings against a contractor. We did hold, however, that the *workmen's* complaint filed after that time deadline was untimely under the Act and that, where a violation was unintentional, the Department had to give the contractor an

---

5. Our scope of review here is limited to determining whether or not the findings of fact are supported by substantial evidence, whether or not an error of law was committed, or whether or not the appellant's constitutional rights were violated. *York Excavating v. Pennsylvania Prevailing Wage Appeals Board*, 663 A.2d 840 (Pa. Cmwlth.1995).

6. In addition to arguing that the above-cited statutes of limitation found in the Act should be applicable to the commencement of enforcement actions, Linde contends that certain regulations also support its position that the action here was time barred. We disagree. There is no language in the regulations cited which provides for a statute of limitations applicable to the Department's initiation of enforcement actions. *See* 34 Pa.Code §§ 9.111(a) and 9.112(a) and (b).

opportunity to comply before issuing a final enforcement order.

Accordingly, we find Linde's arguments to be unpersuasive and conclude that the Board did not err in finding that the Department's action was not time barred in this case.

### 2. Predetermination and the 120–Day Provision:

In accordance with Section 3 of the Act,[7] the Exeter Project specifications contained a predetermination of the prevailing minimum wage rates issued on April 1, 1989. (Finding of Fact No. 3.) Pursuant to 34 Pa.Code § 9.104(a), a public body awarding a contract for public work shall make a new request for a predetermination if the contract is not awarded within 120 days from the determination date.

■ In this case, the Department does not seriously dispute the finding that Exeter Borough awarded Linde the contract more than 120 days after the determination and that it never made a new request for a predetermination. (Department's Brief at 11–12.) It asserts, however, that Linde waived its right to protest the Predetermination by failing to challenge it.

Section 8 of the Act addresses challenges to the wage rates. In pertinent part, it provides as follows:

> **Any prospective bidder or his representative,** any representative of any group of employers engaged in the particular type of construction, reconstruction, alteration and demolition or repair work involved, any representative of any craft or classification of workmen or the public body **may, within ten days after the publication and issue of the specifications covering the particular contract for public work involved, file with the secretary a verified petition to review the determination of any such rate or rates.** Within two days thereafter a copy of such petition shall be filed with the public body authorizing the public work. The petition shall set forth the facts upon which it is based. The secretary shall, upon notice to the petitioner, the public body authorizing the public

work and the recognized collective bargaining representatives for the particular crafts and classifications involved . . . , institute an investigation and hold a public hearing within twenty days after the filing of such petition. Within ten days thereafter, the secretary shall make a determination and transmit it, in writing, to the public body and to the interested parties. Such determination shall be final unless within ten days an appeal is filed with the Appeals Board. . . .

43 P.S. § 165–8 (emphasis added).

The Secretary found that neither Linde nor any other interested party filed a challenge to the predetermination issued for the project. (Finding of Fact No. 8.) In fact, "[a]t no time prior to the award of the Project contract, or at the start of the Project, did [Linde] complain about the inclusion of state prevailing wage rates in the specifications for the Project." (Finding of Fact No. 9.) On these grounds, the Secretary found that Linde waived its right to complain about the date of the Predetermination by signing the contract, by agreeing to pay the predetermined rates and by certifying that it was complying with the Act. (Decision at 21–22.) We agree that Linde waived its right to protest the public's body failure to adhere to the 120–day time period.

In addition, as the Board noted, we held in *A.R. Scalise Company v. Pennsylvania Prevailing Wage Appeals Board, Department of Labor and Industry,* 38 Pa.Cmwlth. 549, 393 A.2d 1306 (1978) that a public body's failure to request and obtain a wage rate predetermination until after the start of a public work project did not absolve a contractor from its duty of paying the prevailing wages.

> While the School District may have violated Section 4 of the Act by not including the [minimum wage] rates in the [contract] specifications, the duty of the contractor under Section 5 of the Act to pay the prevailing wages is not contingent upon the School District's fulfillment of its duties under Section 4.

*Id.,* 393 A.2d at 1308 (footnotes omitted). On the basis of our holding in *Scalise* and

---

7. 43 P.S. § 165–3.

Linde's failure to preserve any objection to the public body's failure to request a new predetermination when the contract was not awarded within 120 days from the determination date, we find Linde's argument that the Predetermination was invalid to be without merit.

### 3. Predetermination Challenge in Enforcement Proceeding:

Linde argues that the Board erred in determining that it was precluded from contesting the validity and enforceability of the rates in an enforcement proceeding. It contends that Exeter Borough's failure to request a new predetermination after the passage of 120 days and the Prevailing Wage Division's failure to issue such rates prevented Linde from contesting those rates prior to the Department's initiation of the enforcement action. Further, it contends that the Division erred in not including in the prevailing wages issued for the project the language of the "wage freeze" Addendum to the 29 County Collective Bargaining Agreement, which it argues would have had the effect of freezing the wages at issue for the life of the project and rendering Linde without liability.

The Department argues and the Board found that Section 8 of the Act provides the exclusive remedy for qualitative challenges to wage rates. As we noted above, "[a]ny prospective bidder ... may, within ten days after the publication and issue of the specifications covering the particular contract for public work involved, file with the secretary a verified petition to review the determination of any such rate or rates." 43 P.S. § 165–8. Further, Section 8 provides for an extensive notice and hearing procedure and the effect of a petition for review of the rates is to extend "the closing date for the submission of bids until five days after the final determination of the general prevailing minimum wages pursuant to this section and the publication of such findings." 43 P.S. § 165–8.

In addition to the exclusivity and completeness of Section 8, any misunderstanding on Linde's part as to when and how it should

have appealed the rates (R.R. 290–91a) does not excuse its failure to challenge the Predetermination at the appropriate time. *See Pennsylvania Liquor Control Board v. 302 Chelten, Inc.*, 74 Pa.Cmwlth. 253, 459 A.2d 893 (1983) (holding that ignorance of the law is no defense.)

Again, given the Legislature's clear pronouncement on when and how to challenge the Predetermination, we must agree with the Board that Linde waived its right to object to the Predetermination by not challenging it pursuant to the Act at the statutorily mandated time.

### 4. Status of Impaglia and Crofton as Workmen:

Linde argues that the Board erred in considering Impaglia and Crofton to be workmen under the Act and that, as supervisors, they should have been exempted from application of the Act. We disagree.

As the Secretary found, Linde classified both men as foremen in its certified payroll records. (Petitioner's Exhibit 12; R.R. 407a.) Thus, in her audit, Prevailing Wage Inspector Shirley Davis assigned the two men foremen wage rates as set forth in the Predetermination for heavy and highway laborers. (R.R. 250a.) Given the fact that there is substantial evidence of record to support the finding that Impaglia and Crofton were not supervisors and the fact that it is the Secretary's role to weigh the evidence and determine credibility,[8] we agree with the Board that the two men at issue were workmen under the Act.

### CONCLUSION

For the above reasons, we affirm the January 13, 1995 order of the Department of Labor and Industry, Prevailing Wage Appeals Board.

---

8. *York Excavating v. Pennsylvania Prevailing Wage Appeals Board,* 663 A.2d 840 (Pa.Cmwlth. 1995).