**BOCKELMAN TRUCKING, Petitioner**

v.

**PENNSYLVANIA PREVAILING WAGE APPEALS BOARD, Respondent.**

**Delliquadri Trucking & Supply, Inc., Petitioner**

v.

**Pennsylvania Prevailing Wage Appeals Board, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2011.

Decided Oct. 28, 2011.

Kevin Patrick Murphy, Warren, OH, for petitioner Bockelman Trucking.

Jennifer Lynne Berrier, Assistant Counsel, Harrisburg, for intervenor Bureau of Labor Law Compliance.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY President Judge LEADBETTER.

In these consolidated appeals, Bockelman Trucking (Bockelman) and Delliquadri Trucking & Supply, Inc. (Delliquadri) (collectively, Grievants) challenge the final order of the Pennsylvania Prevailing Wage Appeals Board (Board) denying their grievances from the determinations of the Department of Labor and Industry, Bureau of Labor Law Compliance (Bureau) that they must pay prevailing minimum wages to their truck drivers who worked

on a public work project, pursuant to Section 5 of the Pennsylvania Prevailing Wage Act (Act), Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. § 165–5. Grievants argue that they were not required to pay prevailing minimum wages because the truck drivers did not perform services "directly upon the public work project" under Section 2(7) of the Act, 43 P.S. § 165–2(7), defining a "workman" covered by the Act. Grievants further argue that they were "material suppliers" exempt from the prevailing minimum wage requirement under Section 2(7) of the Act. Because the Board's interpretation of Section 2(7) of the Act is reasonable, we affirm.

The relevant facts are undisputed. In 2006, the Pennsylvania Turnpike Commission invited bids to reconstruct the Pennsylvania turnpike between mileposts 1.85 and 9.29 in two phases: reconstruction of the western portion in Lawrence County (Phase I) and the eastern portion in Beaver County (Phase II). J.B. Fay, Co., chosen as a general contractor for the project, entered into a subcontract agreement with McClymonds Supply & Trucking, which in turn subcontracted work to Dawn, Inc. Dawn Inc. entered into subcontract agreements with Bockelman and Delliquadri, Ohio companies, for "material hauling work." Proposed Facts for Stipulation, ¶¶ 5 and 12; Supplemental Reproduced Record (S.R.) at 380b.

From February to September 2007, the truck drivers employed by Bockelman and Delliquadri drove tandem and tri-axle

dump trucks an average of eight hours a day hauling dirt, stones, concrete, gravel, blacktop grindings and shale to and from different locations within the project site. The truck drivers also hauled the materials between the construction site and a dump or borrow pit[1] located near the eastbound lane of the turnpike at mileposts 3 or 4. The trucks accessed the project site through the gates on the fences erected along the project site. In addition, the drivers had to use turnaround areas to go from one side to the other side of the construction site because of concrete barriers placed between the eastbound and westbound turnpike lanes. To reach the dump pit, the drivers had to first drive eastbound on the turnpike to the next exit, get off the turnpike, re-enter the westbound lane of the turnpike, drive one or two miles into Ohio to turn around, and then drive eastbound on the turnpike to the pit.

Section 5 of the Act, 43 P.S. § 165–5, provides that "[n]ot less than the prevailing minimum wages as determined hereunder shall be paid to all *workmen* employed on public work."[2] (Emphasis added.) Section 2(7) of the Act defines a "workman" as follows:

[A] "[w]orkman" includes laborer, mechanic, skilled and semi-skilled laborer and apprentices employed by any contractor or subcontractor and engaged in the performance of services *directly upon the public work project,* regardless of whether their work becomes a compo-

---

1. A "borrow pit" is "an excavated area where material (as earth) has been borrowed to be used as fill at another location." Webster's Third New International Dictionary 257 (2002).

2. The term "public work" is defined as "construction, reconstruction, demolition, alteration and/or repair work other than maintenance work, done under contract and paid for

in whole or in part out of the funds of a public body where the estimated cost of the total project is in excess of twenty-five thousand dollars ($25,000)." Section 2(5) of the Act. The term does not include "work performed under a rehabilitation or manpower training program." *Id.* It is undisputed that the reconstruction project involved in this matter meets the definition of public work.

nent part thereof, but does not include *material suppliers or their employes* who do not perform services *at the job site.* [Emphasis added].

The Act requires every public body proposing a contract for any public work project to obtain from the Secretary of Labor and Industry prevailing minimum wage rates for workers providing services on the public work project. Section 4 of the Act, 43 P.S. § 165–4. After consultation with the advisory board, the Secretary determines a general prevailing wage rate in the locality in which the public work is to be performed for each craft or classification of workers. Section 7 of the Act, 43 P.S. § 165–7. The prevailing minimum wage rates must be published in an invitation of bids for a public work project and incorporated into a project contract. Section 4 of the Act. In addition, the contract must "provide that workmen employed or working on the public work shall be paid *unconditionally*, regardless of whether a contractual relationship exists or the nature of a contractual relationship which may be alleged to exist between a contractor, subcontractor and workmen, at least once a week ... the full amounts due at the time of payment...." 34 Pa.Code § 9.103(6) (emphasis added). The prevailing minimum wage rates for each craft and classification of workers must be posted in prominent and easily accessible places "at the site of the work." Section 9 of the Act, 43 P.S. § 165–9.

In February 2006, the Secretary of Labor and Industry determined that total prevailing minimum wages for "truck drivers class 2" driving tandem or tri-àxle vehicles in Lawrence County and Beaver County were $32.74 an hour (an hourly wage rate of $22.86 plus a fringe benefit rate of $9.88). *See* Plaintiff's Exhibits 3 and 4; S.R. at 147b, 151b and 153b. In the notice to bidders issued in March 2006,

the Pennsylvania Turnpike Commission stated that "[t]he provisions of the ... Act ..., together with the [prevailing minimum wage] rates and regulations promulgated by the Secretary of Labor and Industry applicable thereto, shall apply to this contract." S.R. at 388b. The prevailing minimum wage rates were incorporated into the project contract and posted on the bulletin board at the construction site.

In August 2008, one of Bockelman's truck drivers who worked on the project filed a prevailing wage complaint with the Bureau, alleging that Bockelman paid only $12 an hour, far less than the prevailing minimum wages. After auditing payroll records of Bockelman and Delliquadri for Phase II of the project, the Bureau issued two separate determinations that Bockelman and Delliquadri were required to pay the truck drivers the prevailing minimum wages. The Bureau found that the truck drivers worked directly on the public work project and that their work "appea[red] to excede [sic] that of a driver for a material supplier." S.R. at 135b and 140b. Bockelman and Delliquadri filed grievances with the Board challenging the Bureau's determinations. Grievants contended that they were not subject to the requirement of the Act because they were "material suppliers," and their drivers did not perform services "at the job site." Grievants also relied on the language in the project contract describing the dump or borrow pit as an "off-site disposal" facility and on the fact that their truck drivers exited the turnpike and entered the State of Ohio to turn around on their way to the pit. S.R. at 421b.

The Board found no guidance from the Act, regulations or Pennsylvania case law as to what constitutes performance of services "at the job site" under Section 2(7) of the Act. The Board then reviewed federal court decisions interpreting the provision

of the Davis–Bacon Act, 40 U.S.C. § 276a(a), which requires contractors and subcontractors for a federally funded public project to pay at least prevailing wages to all mechanics and laborers employed "directly upon the site of the work." [3] The Board also sought guidance from 29 C.F.R. § 5.2(*l*)(2), defining the term "the site of the work" to include batch plants and borrow pits exclusively or nearly exclusively dedicated to the project and located adjacent or virtually adjacent to the work site.

The Board concluded that the proximity of the dump or borrow pit to the construction site and the exclusiveness of its use for the project were relevant considerations in determining whether the truck drivers performed services "at the job site." The Board found that the dump pit was located "adjacent to the Turnpike" and "used exclusively for the Project." Board's Findings of Fact Nos. 6 and 9. The Board stated that the fact that the truck drivers were required to exit the turnpike and enter Ohio to turn around on their way to the pit was of no consequence, given the proximity of the pit to the project. The Board further stated that Grievants' duty to pay the prevailing minimum wages is determined by the provisions of the Act, not by the contract describing the pit as an off-site facility. The Board determined that "Grievants . . . were material suppliers performing services at the job site." Board's Conclusion of Law No. 2. Concluding that Grievants failed to establish that they were exempt from the requirement of the Act, the Board denied their grievances. Grievants appealed, and this Court consolidated the appeals. The Bureau intervened in the appeals.[4]

Grievants argue that they were not subject to the prevailing minimum wage requirement of the Act because their truck drivers did not perform services "directly upon the public work project" under Section 2(7) of the Act. In support, Grievants rely on the fact that the drivers had to leave the confines of the construction site and travel to Ohio to turn around to reach the dump or borrow pit. They also rely on the project contract describing the pit as an off-site facility. They claim that they are exempt from the requirement of the Act because they were "material suppliers," and their employees did not perform services "at the job site." Grievants assert that because the Bureau did not audit their payroll records for Phase I of the project, they had no reason to believe that they were subject to the Act for Phase II of the project.

■ The purpose of the Act is to protect workers employed on a public project from being paid substandard wages by insuring their receipt of prevailing minimum wages. *Pa. Nat'l Mut. Cas. Ins. Co. v. Dep't of Labor & Indus., Prevailing Wage Appeals Bd.*, 552 Pa. 385, 715 A.2d 1068 (1998); *Lycoming County Nursing Home Ass'n v. Dep't of Labor & Indus., Prevailing Wage Appeal Bd.*, 156 Pa.Cmwlth. 280, 627 A.2d 238 (1993). Providing such protection helps the hiring of skilled workers on public projects. *Keystone Chapter of Associated Builders & Contractors, Inc. v. Dep't of Labor & Indus.*, 51 Pa.Cmwlth. 586, 414 A.2d 1129 (1980).

■ Because the Act is a remedial statute, it must be construed broadly for its coverage, and any exceptions to the coverage must be narrowly construed. *Borough*

---

**3.** The phrase "directly on the site of the work" is now contained in the revised provisions of the Davis–Bacon Act, 40 U.S.C. §§ 3142 and 3143.

**4.** The Board filed a notice of non-participation.

*of Schuylkill Haven v. Prevailing Wage Appeals Bd.*, 6 A.3d 580 (Pa.Cmwlth.2010), *appeal denied,* —— Pa. ——, 22 A.3d 1035 (2011); *Butler Balancing Co. v. Dep't of Labor & Indus., Prevailing Wage Appeals Bd.*, 780 A.2d 840 (Pa.Cmwlth.2001). The Board has the power and duty to decide a grievance and to promulgate rules and regulations necessary to carry out its duty. Section 2–2(e)(1) and (2) of the Act, added by Section 3 of the Act of August 9, 1963, P.L. 653, 43 P.S. § 165–2.2(e)(1) and (2). Consequently, the Board's interpretation of the Act is accorded deference and is given controlling weight, unless it is clearly erroneous. *Wheeling–Pittsburgh Steel Corp. v. Dep't of Envtl. Prot.*, 979 A.2d 931 (Pa.Cmwlth.2009). Nonetheless, our review of the Board's order is plenary where, as here, the dispute involves interpretation of statutory language. *Stanish v. Workers' Comp. Appeal Bd. (James J. Anderson Constr. Co.)*, 11 A.3d 569 (Pa. Cmwlth.2010).

The object of statutory construction is to ascertain and effectuate the legislative intent. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a); *Pa. Associated Builders & Contractors, Inc. v. Commonwealth Dep't of Gen. Servs.*, 593 Pa. 580, 932 A.2d 1271 (2007). Statutes and parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things and, therefore, must be construed together, if possible. Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932; *Wheeling–Pittsburgh Steel Corp.* Section 2(7) of the Act defines a workman as an employee of a contractor or subcontractor working "directly upon the public work project" and excludes from the definition material suppliers or their employees who do not perform services "at the job site." Section 9 of the Act requires contractors and subcontractors to post the applicable prevail-

ing minimum wage rates "at the site of the work." The Act thus uses the phrases "directly upon the public work project," "at the job site," and "at the site of the work" interchangeably.

█ The federal Davis–Bacon Act imposes a similar requirement upon contractors and subcontractors for federally funded public projects to pay at least prevailing wages to all mechanics and laborers employed "directly on the site of the work." 40 U.S.C. §§ 3142–3143. A court may seek guidance from federal case law, federal regulations and a federal agency's rulings interpreting a federal statute which substantially parallels the state statute where, as here, Pennsylvania courts have not interpreted the language in question. *Dep't of Labor & Indus., Bureau of Labor Law Compliance v. Stuber*, 822 A.2d 870 (Pa.Cmwlth.2003), *aff'd*, 580 Pa. 66, 859 A.2d 1253 (2004); *Riedel v. Human Relations Comm'n of Reading*, 756 A.2d 142 (Pa.Cmwlth.2000); *Gosewisch v. Dep't of Revenue*, 40 Pa.Cmwlth. 565, 397 A.2d 1288 (1979).

In *Building and Construction Trades Department, AFL–CIO v. United States Department of Labor Wage Appeals Board*, 932 F.2d 985 (D.C.Cir.1991) (*Midway*), the truck drivers employed by the contractor for the federally funded construction project delivered materials from a commercial supplier located up to fifty miles from the construction site. The definition of "the site of the work" in 29 C.F.R. § 5.2(l) then in effect included "other adjacent or nearby property used by the contractor or subcontractor in such construction which can reasonably be said to be included in the 'site.'" The *Midway* court held that the Davis–Bacon Act did not cover mechanics and laborers who came onto the project site only to drop off construction materials and left the site.

Subsequently in *Ball, Ball & Brosamer, Inc. v. Reich,* 24 F.3d 1447 (D.C.Cir.1994), the subcontractor established a borrow gravel pit and a portable batch plant for mixing concrete two miles from the site of the thirteen-mile aqueduct construction. While not directly expressing an opinion as to the validity of 29 C.F.R. § 5.2(*l* ), the court concluded that the regulations "under which [the subcontractor] was held liable [were] inconsistent with the Davis–Bacon Act." *Id.* at 1453. In *L.P. Cavett Co. v. United States Department of Labor,* 101 F.3d 1111 (6th Cir.1996), the Court held that the truck drivers hauling asphalt from the batch plant located three to five miles from the construction site were not entitled to prevailing wages. The court stated that "it [was] not unreasonable to conclude that while a facility in virtual adjacency to a public work site might be considered part of that site, a facility located two (or in this case three) miles away from the site would not." *Id.* at 1115.

The facts in this case are more akin to those in *Bechtel Contractors Corporation* (ARB Case No. 97–149, filed March 25, 1998), a decision of the Department of Labor, Administrative Review Board, which involved three batch plants located less than one-half mile from the pumping stations being constructed as part of a 330-mile aqueduct construction project. The board found that the batch plants met the definition of the site of the work, stating:

> [I]t is the nature of such construction ... that the work may be long, narrow and stretch over many miles. Where to locate a storage area or a batch plant along such a project is matter of the

contractor's convenience and is not a basis for excluding the work from the [Davis–Bacon Act].... [T]he project consisted of miles of narrow aqueduct connected by pumping stations. The only feasible way to meet the needs of the aqueduct construction was to have the concrete prepared at a convenient site and transported to the precise area of need. This equally holds true for the storage and distribution of other materials and equipment.

*Id.,* slip op. at 6 (quoted in 65 Fed.Reg. 80270).

In light of these decisions, the Department of Labor amended 29 C.F.R. § 5.2(*l* ) in 2000 to redefine "the site of the work" as follows:

> (1) The site of the work is the physical place or places where the building or work called for in the contract will remain; and *any other site* where a significant portion of the building or work is constructed, provided that such site is *established specifically for the performance of the contract or project;*
>
> (2) Except as provided in paragraph (*l* )(3) of this section,[5] job headquarters, tool yards, batch plants, *borrow pits,* etc., are part of the site of the work, provided they are *dedicated exclusively, or nearly so, to performance of the contract or project,* and provided they are *adjacent or virtually adjacent to the site of the work* .... [Emphasis added.]

Under this definition, "the site of the work" includes "secondary sites, other than the project's final resting place," if they "are dedicated to the covered project *and* are adjacent or virtually adjacent [6] to

---

**5.** The following items are excluded from the definition of the site of the work: "fabrication plants, batch plants, borrow pits, job headquarters, tool yards, etc., of a commercial or material supplier, which are established ... for the project before opening of bids and not

on the site of the work as stated in paragraph (*l* )(1) of this section." 29 C.F.R. § 5.2(*l* )(3).

**6.** The word "adjacent" means "[l]ying near or close to, but not necessarily touching." Black's Law Dictionary 44 (8th ed.2004).

a location where the building or work is being constructed." 65 Fed.Reg. 80268 and 80270 (emphasis in original).

■ We find the definition in the 2000 amendment to 29 C.F.R. § 5.2(*l*), adopted by the Board, to be a reasonable interpretation of the phrase "directly on the site of the work," which is equally applicable to the similar phases "directly upon the public work project" and "at the job site" in Section 2(7) of the Act. The Board's interpretation of Section 2(7) is consistent with the liberal construction of the Act for its broader coverage and promotes the purpose of the Act guaranteeing payment of prevailing minimum wages to workers providing services on the public work project.

In this grievance proceeding, it was Grievants' burden to establish that their truck drivers did not fall within the definition of "workman." 34 Pa.Code § 213.8(j); *Butler Balancing*. The Bureau's labor law investigator, Danny Wenger, described the pit as "a designated dump site and fill area . . . solely for the project, . . . which means the project would have extended . . . to the borrow areas." Notes of Testimony (N.T.) at 49; Reproduced Record (R.R.) at 54a. Grievants do not challenge the Board's finding that the pit was "used exclusively for the project" and was "an extension of the Project." Board's Findings of Fact Nos. 9–10. Grievants' presidents testified

that the pit was located "on the eastbound side off . . . on a mountain" and "on the south side of the turnpike." N.T. at 17 and 31; R.R. at 22a and 36a.

Grievants did not present evidence of the actual distance between the pit and the construction site or any other evidence which would refute the Board's finding that the pit was located adjacent to the turnpike.[7]

■ The record established that the trucks could not cross the turnpike lanes due to the concrete barriers placed during the construction and were required to travel to the turnaround areas to go from one side to the other side of the construction site and to reach the pit. The controlling factor in this matter is the location of the pit adjacent or virtually adjacent to the reconstruction site and its exclusive or near exclusive dedication to the turnpike reconstruction, not the actual distance that the truck drivers had to travel on the turnpike to reach the pit during the reconstruction of the turnpike itself. Because the truck drivers hauled construction materials within the confines of the reconstruction site and between the reconstruction site and the dump pit located adjacent to the turnpike lanes, they performed services "directly upon the public work project" and met the definition of "workman" covered by the Act.[8]

7. When asked by the Court during the argument, Grievants' counsel stated that the pit was located "less than a mile" from the construction site.

8. Grievants' reliance on *Sheet Metal Workers' International Association, Local Union No. 33 v. Gene's Refrigeration, Heating & Air Conditioning, Inc.*, 122 Ohio St.3d 248, 910 N.E.2d 444 (2009), is inapposite. In that case, the contractor performed construction work on the project site and also fabricated duct work for the project in an off-site shop. The Ohio prevailing wage statute required contractors and subcontractors for a public improvement

project to pay laborers and mechanics prevailing minimum wages, but, unlike the Act, was silent as to whether workers must work directly on the project site to be entitled to prevailing minimum wages. The contractor's employees in that case worked in the off-site fabrication shop. Relying on *Clymer v. Zane*, 128 Ohio St. 359, 191 N.E. 123 (1934), holding that employees working off-site in a gravel pit were not entitled to prevailing wages, the Ohio Supreme Court held in *Sheet Metal* that the prevailing wage requirement applied only to those who performed work "directly on the site of the public improvement project." *Id.* at 257, 910 N.E.2d at 453. We note that

■ Further, contrary to Grievants' assertion and the Board's finding, the facts in this case do not establish that Grievants were "material suppliers" under Section 2(7) of the Act. The term "material supplier" is not defined in the Act. Under the common usage, a "supplier" is "[a] person engaged, directly or indirectly, in the business of making a product available to consumers." Black's Law Dictionary 1480 (8th ed.2004). Grievants subcontracted to perform and performed "material hauling work" for the project. Proposed Facts for Stipulation, ¶¶ 5, 6, 12 and 13; S.R. at 380b. Grievants' witnesses also testified that Grievants provided "hauling" services. N.T. at 9, 10 and 24; R.R. at 14a, 15a and 29a. Grievants did not come to the construction site only to drop off any products from off-site facilities and then left the site, as in *Midway*. Rather, the drivers came to the construction site with unloaded trucks and hauled the construction materials full-time within the project confines and to and from the adjacent pit. They prepared work logs each day, indicating materials hauled, locations of the hauling, mileages on the trucks and hours worked. Grievants, therefore, are not material suppliers exempt from the prevailing minimum wage requirement under Section 2(7) of the Act. Even assuming that Grievants may be considered to be material suppliers, their truck drivers were not excluded from the definition of "workmen" because they worked "at the job site."

■ Finally, neither Grievants' alleged unawareness of the prevailing minimum wage requirement until the Bureau's audit of their payroll records nor the description of the pit as an "off-site" facility in the project contract absolves them from complying with the requirement of the Act. As the Pennsylvania Supreme Court observed:

> [T]he Act's focus is placed squarely on protecting workers on public works projects from receiving substandard wages.... Therefore, it is irrelevant that Appellant in good faith had determined that the Project was not subject to the Act. The Act provides that **the worker** is not to be "punished" by payment of substandard wages.

*Borough of Youngwood v. Pa. Prevailing Wage Appeals Bd.*, 596 Pa. 603, 618–19, 947 A.2d 724, 733 (2008) (emphasis in original). This Court has consistently held that the duty to pay the prevailing minimum wages is determined by the provisions of the Act alone and is not affected by other factors. *See, e.g., Borough of Schuylkill Haven* (the duty to pay a prevailing wage was not affected by the public body's designation of the project as "maintenance work" excluded from the definition of public work); *Borough of Ebensburg v. Prevailing Wage Appeals Bd.*, 893 A.2d 181 (Pa.Cmwlth.2006) (the borough could not rely on a memorandum of understanding between two state agencies attempting to define the term "maintenance" to argue that the project was exempt from the requirement of the Act); *A.R. Scalise Co. v. Pa. Prevailing Wage Appeals Bd.*, 38 Pa. Cmwlth. 549, 393 A.2d 1306 (1978) (a public body's failure to include a prevailing wage rate in the contract specifications did not absolve the contractor from paying the prevailing minimum wages). Hence, Grievants must comply with the prevailing minimum wage requirement, regardless of their good faith understanding of the requirement or the language in the project contract.

---

decisions of sister states are not binding upon this Court. *Commonwealth v. Nat'l Bank & Trust Co. of Cent. Pa.,* 469 Pa. 188, 364 A.2d

1331 (1976). Moreover, the *Sheet Metal* court did not define the phrase "directly on the site of the public improvement project."

Accordingly, the Board's final order is affirmed.

### *ORDER*

AND NOW, this 28th day of October, 2011, the final order of the Pennsylvania Prevailing Wage Appeals Board in the above-captioned matter is AFFIRMED.