947 A.2d 724

**BOROUGH OF YOUNGWOOD, Appellant**

v.

**PENNSYLVANIA PREVAILING WAGE APPEALS BOARD, Appellee.**

Supreme Court of Pennsylvania.

Argued April 16, 2008.

Decided June 4, 2008.

604

Gerald William Yanity, Gerald Joseph Yanity, Yanity Law Offices, Latrobe, for Borough of Youngwood, appellant.

Stanley J.A. Laskowski, Caldwell & Kearns, P.C.; Peter Grayson Howland, Wix, Wenger & Weidner, P.C., Harrisburg, for PA State Ass'n of Tp. Sup'rs, appellant amicus curiae.

Gina S. Mekley, for Prevailing Wage Appeals Bd., appellee.

James A. Holzman, PA Dept. of Labor & Industry, Harrisburg, for Bureau Labor Law Compliance, appellee.

Joshua Martin Bloom, Pittsburgh; Irwin William Aronson, Willig, Williams & Davidson, Philadelphia, for PA State Bldg. & Trades Council, AFL–CIO, et al., appellee amici curiae.

BEFORE CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## OPINION

Justice McCAFFERY.

In this appeal by the Borough of Youngwood (Appellant), we are asked to determine whether Appellant's public works project, which in substantial part consisted of resurfacing portions of five borough streets in addition to other street-related work, is subject to the prevailing minimum wage requirements of the Prevailing Wage Act (Act).[1] We conclude

1. Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §§ 165-1-165-17.

that it is and therefore affirm the order of the Commonwealth Court.

Section 5 of the Act, 43 P.S. § 165–5, requires payment of the prevailing minimum wage [2] for "public work." "Public work" is defined as:

> construction, reconstruction, demolition, alteration and/or repair work **other than maintenance work,** done under contract and paid for in whole or in part out of the funds of a public body where the estimated cost of the total project is in excess of twenty-five thousand dollars ($25,000), but shall not include work performed under a rehabilitation or man-power training program.

43 P.S. § 165–2(5) (emphasis added). "Maintenance work" is defined as "the repair of existing facilities when the size, type or extent of such facilities is not thereby changed or in-creased." 43 P.S. § 165–2(3). "Facility" or "facilities" is not defined in the Act. However, what is abundantly clear is that the primary purpose of the Act is to **protect workers** em-ployed on public work projects **from receiving substandard pay** by ensuring that they receive prevailing minimum wages. *Pennsylvania National Mutual Casualty Insurance Co. v. Department of Labor & Industry, Pennsylvania Prevailing Wage Appeals Board,* 552 Pa. 385, 394, 715 A.2d 1068, 1072 (1998).

In 2005, Appellant solicited bids for a contract to perform work on several roads in its jurisdiction. The bid proposal for the project bore the title "Youngwood Borough 2005–3 Street Resurfacing and Improvement Project" (the Project). The Project had an estimated cost of $183,209, with $71,000 of the cost coming from PennDOT's Liquid Fuels Tax Funds, and the remainder coming from Appellant's general fund.[3] As

---

**2.** The Secretary of Labor and Industry "shall, after consultation with the [A]dvisory [B]oard [of the Department of Labor and Industry], determine the general prevailing minimum wage rate in the locality in which the public work is to be performed for each craft or classification of all workmen needed to perform public work contracts during the anticipated term thereof...." 43 P.S. § 165–7.

**3.** Thus, the Project was (1) to be performed under contract; (2) to be paid for by funds of public bodies; and (3) bore an estimated cost in

advertised by Appellant, the Project consisted of (1) resurfacing portions of five streets by milling approximately 11,000 square yards of cartway and paving with 1270 tons of ID#2 binder or wearing course and approximately 11,600 square yards of surface material; (2) the surface treatment of 9800 square yards of two streets; (3) minor drainage of one street; (4) patching approximately 1300 square yards of one street; (5) constructing six catch basins; (6) replacing approximately 570 linear feet of existing piping and approximately 650 linear feet of French drains; (7) raising a manhole cover with a one-inch spacer ring; and (8) additional labor to treat and finish the work. The resurfacing work involves a process called "milling," whereby between 1½" and 3½" of the existing street is "cut" or ground down prior to application of the new surface. The new surface consists of a ½" leveling course and a final course of 1½" of blacktop. However, where the existing roadway has deteriorated more significantly, as much as 2" of binder can be applied under the new surface. Milling was eventually performed on seven blocks of Appellant's streets, and a substance designed to improve the binding of layers of the new road surface, called "Petromat," was applied to particularly damaged roadways. *See* Final Decision and Order of the Pennsylvania Prevailing Wage Appeals Board, dated January 19, 2007 (hereinafter Board's Final Decision and Order), at 2–4, Findings of Fact Nos. 2–7.

Appellant designated the milling and repaving of the five streets as "maintenance" and not "public work" as defined by the Act. Additionally, Appellant estimated that the milling and repaving of the five streets constituted 40% of the total estimated Project cost. Appellant determined that only 11.3% of the estimated Project cost was for non-maintenance work, and that the remaining 88.7% was for maintenance work as defined by the Act. For this reason, Appellant determined that the Project did not require the payment of prevailing minimum wages, and solicited bids for the Project as a "mainte-

excess of $25,000. Accordingly, the only issue that this case raises under 43 P.S. § 165-2(5) is whether the Project consisted of "construction, reconstruction, demolition, alteration and/or repair work" or merely "maintenance work."

nance" project **not** subject to the Act. A contract for the Project was awarded to the lowest responsible bidder, Pompei & Sons, on July 13, 2005.

After completion of the Project, the Bureau of Labor Law Compliance of the Department of Labor and Industry (Bureau) contacted Appellant to investigate whether Appellant had complied with the Act by accurately characterizing the nature of the Project as "maintenance work." After its investigation, the Bureau determined that the Project was principally a reconstruction project, not a maintenance one, and therefore, prevailing minimum wages should have been paid pursuant to the Act. In arriving at its determination, the Bureau specifically rejected Appellant's reliance on a publication issued by the Pennsylvania Department of Transportation (PennDOT) entitled "Policies and Procedures for the Administration of the County Liquid Fuels Tax Act of 1931 and The Liquid Fuels Tax Act 655" (Publication 9), effective January 2003. Publication 9 included the information contained in an unsigned and undated Memorandum of Understanding (MOU) prepared by PennDOT and the Department of Labor and Industry (DLI) that incorporated PennDOT's interpretation of the term "maintenance" under the Act. Significant to the instant case, the MOU provided that replacement in kind of guide rail, curb, and pipes was maintenance, as was "black top paving (laid on asphalt pavement, cement concrete, or other hard surface) [u]p to three and a half inches thickness or up to 420 pounds per sq. yd." MOU at 1, submitted as Exhibit BLLC–1 at the Board hearing. The MOU further provided that if non-maintenance items exceeded 15% of the total project cost, the project was to be treated as a non-maintenance contract.

The Bureau informed Appellant that the MOU "is no longer in use and does not reflect the prevailing wage requirements under the Act. Additionally, [Appellant] is not a party to the [MOU]." Letter from the Bureau to Appellant, dated December 30, 2005, at 3. The Bureau further noted that DLI had stopped using the MOU in January 2005, although DLI did not inform PennDOT of this fact until September or October

2005, which was after the Project had been completed. Board's Final Decision and Order at 6, Findings of Fact Nos. 20–21.

Appellant filed a grievance with the Pennsylvania Prevailing Wage Appeals Board (Board) on February 17, 2006, challenging the Bureau's determination. Following an evidentiary hearing and oral argument, the Board denied Appellant's grievance on January 19, 2007, after determining that the Project consisted principally of "alteration work," not "maintenance work," and was accordingly subject to the Act "even though some of the work, standing alone, would qualify as maintenance work." Board's Final Decision and Order at 14, Conclusions of Law Nos. 1 and 3.

Upon appeal from that decision, in an *en banc* opinion authored by Judge McGinley, the Commonwealth Court affirmed, determining that the "milling" and repaving of road surfaces, which constituted 40% of the Project, was activity that went well beyond "maintenance" and was, in fact, repair or construction. The court had not previously ruled on whether the milling of a roadway in anticipation of repaving is maintenance or construction, and therefore whether the activity is subject to prevailing minimum wages. Accordingly, the court began its analysis with a review of analogous case law, principally, *Kulzer Roofing, Inc. v. Department of Labor & Industry,* 68 Pa.Cmwlth. 642, 450 A.2d 259 (1982). In *Kulzer Roofing,* the court held that the re-roofing of eight buildings was repair rather than maintenance, subject to prevailing minimum wages, because the entire roof of each building was replaced, rather than simply being partially overhauled or patched. In the present matter, the court observed that under *Kulzer Roofing,* the replacement of an old roof with a new roof constituted a **change in type,** and therefore constituted "repair work," not "maintenance work" under the Act. Accordingly, the court concluded that the replacement of an old road top with a new road top is in similar manner a change in type, and therefore it was "repair work," not "maintenance work" under the Act. *Borough of Youngwood v. Pennsylvania*

*Prevailing Wage Appeals Board,* 938 A.2d 1198, 1201 (Pa. Cmwlth.2007) (*en banc*).

The court also rejected Appellant's argument that it had justifiably relied upon the MOU, citing *Borough of Ebensburg v. Prevailing Wage Appeals Board,* 893 A.2d 181 (Pa.Cmwlth. 2006). In that case, the borough had initiated a project to demolish and reconstruct sidewalk and curbing along a street at an estimated cost in excess of the statutory maximum exclusion of $25,000, using public funds. The MOU at issue in that controversy defined "maintenance under the Act as replacement of the curb in kind but also define[d] [installation of] new curb as *not* maintenance." *Id.* at 184 (emphasis added). The MOU did not address sidewalks. However, the court noted that the Borough of Ebensburg could not rely on the MOU because "it should have been apparent to [the borough] that the MOU was a separate understanding between two Commonwealth agencies attempting to interpret a statute and that [the MOU] would not be binding in [c]ourt as to a third party." *Id.* at 184, n. 4.

Here, the Commonwealth Court held that Appellant's reliance on the MOU was misplaced, and stated as follows: "[Appellant], like any other municipal body, had the DLI at its disposal, and [Appellant] chose to forego communication with that agency, and instead relied on an unsigned and undated MOU to which [Appellant] was not a party. This Court does not consider such reliance justifiable." *Borough of Youngwood, supra* at 1202. The court further held that "just as the demolition and reconstruction of the curb in *Ebensburg* was found to be construction and subject to prevailing minimum wages, this Court believes that grinding away the top three and one half inches or more of roadway and the laying down of new road, adding materials like Petromat which was not included in the first iteration of the roadway, constituted nonmaintenance activity subject to prevailing minimum wages under the Act." *Id.*[4]

4. Judge Leavitt, joined by Judge Simpson, dissented. The dissent concluded that preparing a road for new blacktop is not "repair" but, rather, "maintenance." The dissent observed that in the present case,

We granted Appellant's petition for allowance of appeal on the following three issues: [5]

1. Whether the Commonwealth Court erred in affirming the decision of the Pennsylvania Prevailing Wage Appeals Board, which held that [Appellant's] 2005 Street Resurfacing Project[,] which included milling and road resurfacing, constituted alteration and not maintenance, and was therefore subject to the payment of prevailing minimum wages under the Act?

2. Whether the Commonwealth Court erred in finding that [Appellant] was not justified in relying upon a memorandum of understanding, promulgated by and between two state agencies, namely the Department of Labor and Industry ("DLI") and its Bureau of Labor Law Compliance (the "Bureau") and the Pennsylvania Department of Transportation ("PennDOT"), and not withdrawn in writing until after the Project was completed, to determine that the 2005 Street Resurfacing Project was a maintenance project, and not a repair project?

Appellant was not replacing an old road with a new road; rather the top of the road was "milled" in preparation for the laying down of the new surface material. The dissent agreed with Appellant that this activity is similar to the process of scraping off peeling paint before putting down a new layer of paint. The dissent also concluded that milling is simply preparation for the "partial" overhaul of the road that leaves the roadbed and subsurface areas unaffected and does not increase the "size, type or extent" of the road.

The dissent further observed that the milled road continued to be used until the new surface was applied. Thus, the dissent drew a distinction with the project in *Ebensburg*, where the sidewalks and curbing were demolished and were thus unusable until replaced. The dissent opined that because all roads require "maintenance" in the form of periodic reapplication of a surfacing material, only where the substrata of the roadways are replaced should the roadwork be considered a repair project subject to the prevailing wage requirements of the Act.

The dissent further determined that the record showed that Appellant was not trying to evade the Act. Rather, according to the dissent, the record showed that Appellant had researched the question and had relied upon directives from Commonwealth agencies, which Appellant interpreted as indicating that the Project did not implicate the Act.

5. However, we note that the first and third issues are essentially the same, and accordingly we shall review them as one.

3. Whether the Commonwealth Court erred in determining that the partial milling and repaving of certain public streets, or sections thereof, is repair work, rather than maintenance work, and is therefore subject to prevailing wage requirements, even when the size, type and extent of the roadways was not altered thereby?

On issues 1 and 3, Appellant argues that we should apply the "plain language" of Section 2(3) of the Act, 43 P.S. § 165-2(3), defining "maintenance work" as the "repair of existing facilities when the size, type or extent of such facilities is not thereby changed or increased." Appellant contends that the "size, type, or extent" of the roadways that were improved by the Project were not changed in any manner, in that they were not rebuilt, redirected, lengthened, or widened; rather, the roadways were simply resurfaced. Appellant also disagrees with the Commonwealth Court majority's conclusion that the Project resulted in a replacement of old road with new, contending that the old road never ceased to exist; it was simply "maintained" by the only generally accepted industry standard now existing: that of milling and repaving. Therefore, Appellant contends, as did the Commonwealth Court dissent, that the Project consisted to a "critical degree" of maintenance work only.[6]

Because this appeal involves statutory interpretation, we look first to the principles and rules set forth in the Statutory Construction Act of 1972. "The object of all inter-

6. In making this argument, Appellant relies on the MOU contained in Publication 9, which states in pertinent part that if non-maintenance items exceed 15% of the total project cost, the project is to be treated as a non-maintenance contract (*i.e.*, a "public work" as defined by the Act), thus subject to prevailing minimum wages. Appellant concedes that if the resurfacing portion of the Project, consisting of 40% of the Project, is determined by us to be a "public work" rather than "maintenance" as defined by the Act, the Project is subject to the prevailing minimum wage requirements of the Act. However, nothing in the Act or in any regulation promulgated under the Act specifically provides that the prevailing wage requirements of the Act apply only when a public project consists of a particular percentage of "public work." Because our resolution of this case does not require that we decide the issue of whether a public works project requires a certain percentage of "public work" in order for the prevailing minimum wage requirements of the Act to apply, we need not address that issue now.

pretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). As previously stated, this Court has already ascertained the clear intent of the Act: "[T]he primary underlying policy of the Act is to protect work[ers] employed on public work projects from [receiving] substandard pay by ensuring that they receive prevailing minimum wage[s]." *Pennsylvania National Mutual, supra* at 394, 715 A.2d at 1072. Indeed, the Act imposes **a duty** upon every public body (43 P.S. § 165–4), every contractor and subcontractor performing public work (43 P.S. § 165–6), and the Secretary of Labor and Industry (43 P.S. § 165–7) to implement by different means the specific mandate of the Act that "[n]ot less than the prevailing minimum wages as determined hereunder shall be paid to all work[ers] employed on public work." [7] 43 P.S. § 165–5. There could be no clearer mandate from the General Assembly that for all public works

7. 43 P.S. § 165–4 provides:
   § **165–4. Duty of public body**
   It shall be the duty of every public body which proposes the making of a contract for any project of public work to determine from the [S]ecretary [of Labor and Industry (Secretary)] the prevailing minimum wage rates which shall be paid by the contractor to the work[ers] upon such project. Reference to such prevailing minimum rates shall be published in the notice issued for the purpose of securing bids for such project of public work. Whenever any contract for a project of public work is entered into, the prevailing minimum wages as determined by the [S]ecretary shall be incorporated into and made a part of such contract and shall not be altered during the period such contract is in force.
   43 P.S. § 165–6 provides:
   § **165–6. Duty of contractor**
   Every contractor and subcontractor shall keep an accurate record showing the name, craft and the actual hourly rate of wage paid to each work[er] employed by him in connection with public work, and such record shall be preserved for two years from date of payment. The record shall be open at all reasonable hours to the inspection of the public body awarding the contract and to the [S]ecretary.
   43 P.S. § 165–7 provides:
   § **165–7. Duty of [S]ecretary**
   The [S]ecretary shall, after consultation with the advisory board, determine the general prevailing minimum wage rate in the locality in which the public work is to be performed for each craft or classification of all work[ers] needed to perform public work con-

projects under contract exceeding $25,000, prevailing wages are to be paid to the workers on those projects, except in the single narrow circumstance where the work could be considered merely "maintenance." As the Commonwealth Court has astutely held, the Act is a remedial statute; therefore, any exceptions to its remedial provisions are to be narrowly construed. *DiLucente Corp. v. Pennsylvania Prevailing Wage Appeals Board*, 692 A.2d 295, 299 n. 5 (Pa.Cmwlth.1997). *See also* Section 1928(c) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(c) (providing that "[a]ll ... provisions of a statute [except those statutes enumerated in Section 1928(b), none of which would include the Act] shall be liberally construed to effect their objects and to promote justice.").

In light of these principles, Appellant's expansive interpretation of and singular focus upon 43 P.S. § 165–2(3), which defines the **exception** to the general provisions of the Act, are clearly inappropriate. This section defines "maintenance work" as "repair of existing facilities when the size, type or extent of such facilities is not thereby changed or increased." The Act does not define "size, type, or extent" or indicate examples of same. However, given the clear purpose of the Act to protect workers from receiving substandard wages on public works projects, these modifiers cannot be interpreted to mean that only when a structure or other facility is, through a public works project, enlarged, reduced, or replaced with an entirely new material is the project non-maintenance, no matter how extensive the work.[8] Such an interpretation would be

tracts during the anticipated term thereof: Provided, however, That employer and employe contributions for employe benefits pursuant to a bona fide collective bargaining agreement shall be considered an integral part of the wage rate for the purpose of determining the minimum wage rate under this act. Nothing in this act, however, shall prohibit the payment of more than the general prevailing minimum wage rate to any work[er] employed on public work. The [S]ecretary shall forthwith give notice by mail of all determinations of general prevailing minimum wage rates made pursuant to this section to any representative of any craft, any employer or any representative of any group of employers, who shall in writing request the [S]ecretary so to do.

8. Clearly, the General Assembly did not intend the absurd result that there should be a different disposition of a prevailing wage determina-

completely incompatible with the clear and significant legislative intent of ensuring that workers on public works projects be paid at least the prevailing minimum wage. The exception does not eviscerate the rule.

Further, "maintenance work" is defined by Section 2(3) of the Act as a subset of "repair." "Repair" is a component of "public work" as defined by 43 P.S. § 165–2(5). In *Kulzer Roofing, supra,* the Commonwealth Court observed that the word "repair" would be written out of Section 2(5) of the Act should an expansive interpretation of "maintenance work" be observed. *Kulzer Roofing* overruled *Kitson Brothers, Inc. v. Department of Labor & Industry,* 51 Pa.Cmwlth. 320, 414 A.2d 179 (1980), which had held, in relevant part, that because replacement of a roof on a facility does not change or increase the "size, type or extent" of the facility, the re-roofing project is "maintenance work" not covered by the Act. In *Kulzer Roofing,* the court stated:

> The Act defined public work to include repair work, 43 P.S. § 165–2(5), but created a subset within the general concept of repair work which was not to be considered public work. That subset was maintenance work. Our decision in *Kitson Brothers,* if extended, would hold that repairs to any part of a building which did not change the type or size of the building would be maintenance work. Under such a holding, however, it is difficult for us to envision any repair, as that word is popularly recognized, which would change the size or type of a building and all repair work would therefore be included within the term "maintenance work." Such a result is unacceptable. Sections 1921(a), 1922(2) and 1933 of the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1921(a), 1922(2) and 1933, require that a statute be construed so as to give meaning to all of its terms, and, if we were to apply *Kitson Brothers,* the term "repair work"

tion where, in the one instance, a roadway is resurfaced, and in the other instance, a roadway is resurfaced and widened by one foot. It would not make sense under the Act, given its clear mandate, to treat these situations differently for purposes of whether prevailing wages should be paid, as Appellant advocates by its interpretation of "maintenance work."

in [Section 2(5) of] the Act[, 43 P.S. § 165–2(5),] would be effectively rendered surplusage.

*Id.* at 261.[9]

Moreover, because the Act provides that "public work" includes "repair" and that the exception to "public work" (*i.e.*, "maintenance work") includes "repair" of a specific type, it logically follows that the General Assembly intended that "maintenance work" be considered a **lesser** or **minor** form of "repair." Therefore, we hold that in construing the Act, the focus must fall principally on the Act's clear mandate that prevailing wages are to be paid to workers on public works projects that meet the criteria of 43 P.S. § 165–2(5), taking into consideration that "maintenance work" is an exception to this mandate and must be narrowly construed. The linguistic construction of "maintenance work," in turn, must recognize that the Act defines "maintenance work" as a **subset** of "repair," and must be accordingly viewed in this narrow manner.

In the instant case, the inescapable conclusion is that the Project is subject to the prevailing minimum wage requirements of the Act. Except perhaps for the component of the Project involving the patching of one street, all components of the Project are plainly "public works" requiring the payment of prevailing minimum wages under the Act. Interpreting the Act in accordance with its plain language, the street resurfacing component of the Project, involving the physical removal of several inches of road surface, subsequent treatment of areas of the roadway, and complete resurfacing with several

9. Since *Kulzer Roofing,* the Commonwealth Court has consistently held that the replacement of worn public facilities constituted "public work" subject to the prevailing wage requirements of the Act, despite the fact that the facilities were not thereby enlarged or altered by anything more than the "industry standard" of replacement materials. *See, e.g., Henkels and McCoy, Inc. v. Department of Labor & Industry,* 143 Pa.Cmwlth. 264, 598 A.2d 1065 (1991) (holding that the installation of a replacement telephone system utilizing **existing** tunnels, conduits, and telephone poles is subject to prevailing wages and is not excluded as maintenance); and *Ebensburg, supra,* 893 A.2d at 181 (holding that in-kind replacement of sidewalks and curbing is subject to prevailing wages and is not excluded as maintenance).

inches of new material, plainly involves "construction, reconstruction, demolition, alteration and/or repair work," not the minor repairs constituting "maintenance work." Accordingly, we determine that the Commonwealth Court correctly held that the Project was subject to the prevailing minimum wage requirements of the Act.

■ Appellant also argues, however, that the Bureau should be collaterally estopped from imposing upon Appellant the requirement that it pay prevailing wages for the Project when, to its alleged detriment, it justifiably relied on the MOU in arriving at its determination that the Project was not subject to the prevailing wage requirements of the Act. Appellant argues that it "is patently unfair" for the Bureau to require Appellant to pay additional monies now that the Project has been completed. Further, at oral argument, Appellant asserted that it "should not be punished" for relying upon a statement of understanding between two relevant administrative agencies regarding the Act's interpretation of whether street resurfacing constituted "maintenance work."

■ The MOU is neither a part of the Act nor a duly promulgated regulation under the Act. Moreover, the Act's focus is placed squarely on protecting workers on public works projects from receiving substandard wages, including those workers who live and/or engage in commerce in the municipalities that contract for public work projects. Although we recognize that the budgeting concerns of public bodies are highly important, the Act does not provide that its mandate to protect workers on public works projects from receiving substandard wages is to be subservient to budgeting matters. In fact, it would appear that the opposite is true. Appellant, as a public body contracting for public works projects, has an **express duty** under the Act to implement the Act's mandate of ensuring that workers on such projects be paid prevailing wages, not substandard wages. *See* 43 P.S. § 165–4. Therefore, it is irrelevant that Appellant in good faith had determined that the Project was not subject to the Act. The Act provides that **the worker** is not to be "punished" by payment

of substandard wages. Appellant's duty, as expressly provided in the Act, is to ensure that workers are paid prevailing wages for public works. Accordingly, it is our determination that the Commonwealth Court correctly held that Appellant's argument that it had justifiably relied upon the MOU, and thus was not responsible for payment of prevailing wages, must fail.

For the above reasons, the order of the Commonwealth Court is affirmed.

Justice BAER concurs in the result.