**BOROUGH OF SCHUYLKILL HAVEN, Petitioner**

v.

**PREVAILING WAGE APPEALS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 16, 2010.

Decided June 30, 2010.

Publication Ordered Aug. 20, 2010.

Reargument Denied Aug. 25, 2010.

Mark Semanchik, Frackville, for petitioner.

James A. Holzman, Deputy Chief Counsel, for intervenor, Bureau of Labor Law Compliance.

BEFORE: PELLEGRINI, Judge, and BROBSON, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

The Borough of Schuylkill Haven (Borough) petitions for review of an order of the Pennsylvania Prevailing Wage Appeals Board (Board) that denied the Borough's grievance challenging a determination of the Department of Labor and Industry's Bureau of Labor Law Compliance (Bureau). The Bureau's determination concluded that the Borough's Sanitary Sewer Manhole Maintenance Project (Project) is subject to the Pennsylvania Prevailing Wage Act (Act).[1]

Prior to September 28, 2007, the Borough issued an invitation for public bids on the Project (then titled the Manhole *Rehabilitation* Project). In conjunction therewith, the Borough requested from the Bureau the Pennsylvania prevailing wages for the Project, which the Bureau issued on September 11, 2007. Thereafter, on September 27, 2007, the Borough cancelled the opening for this bid solicitation.

Prior to October 5, 2007, the Borough issued a second invitation for bids for the Project. The Borough re-titled the Project as the Manhole *Maintenance* Project, and the second bid solicitation did not list

---

1. Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. §§ 165–1–165–17.

as a requirement the payment of Pennsylvania prevailing wages.

The Borough's correspondence with the Bureau characterized the Project's work as including: the cleaning of manholes and surface preparation as necessary for the correct application of rehabilitative materials; the replacement of manhole access covers, frames and steps; the installation and/or replacement of manhole inserts and risers; the relining of the interior portion of manhole risers and/or the filling of manholes with either micro-silicate or epoxy, and; manhole bench and flow channel rehabilitation. Reproduced Record (R.R.) at 58a. The Project's estimated cost was $250,000.00.

By letter dated July 1, 2008, the Bureau determined that the Project was subject to the Act, and that thus Pennsylvania prevailing wages were required, based in part upon the documents submitted by the Borough. R.R. at 61a–65a. In its July 1, 2008 Determination the Bureau reasoned, in relevant part, that the Project did not constitute maintenance work which would be excluded from the Act's prevailing wage payment mandate, but rather constituted repair work that was subject to the Act. *Id.*

The Borough subsequently filed a grievance under the Act on July 24, 2008. The Board thereafter received briefs on the issues from the Borough and the Bureau, and held oral argument on the matter. By Decision and Order dated April 7, 2009, the Board denied the Borough's grievance, and upheld the application of the Act to the Project. The Borough then timely petitioned this Court for review of the Board's order, and the Bureau intervened.[2]

In reviewing a decision of the Board, this Court's scope of review is limited to determining whether constitutional rights were violated, whether the Board committed an error of law, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Butler Balancing Co., Inc. v. Department of Labor & Industry, Prevailing Wage Appeals Board,* 780 A.2d 840 (Pa.Cmwlth. 2001).

The Borough presents two issues for review, which we have reordered in the interests of clarity: 1.) whether the Board erred in concluding that the Borough failed to meet its burden of proving that the scope of work did not change the size, type, and extent of the manholes, and 2.) whether the Board erred in concluding that the evidence of record supported the conclusion that the Project's work involved a replacement of 75–80% of the manholes, and thusly constituted non-maintenance work subject to the Act.

The Board, in its Decision in this matter, aptly stated the applicable law:

The Act's purpose is to protect workers on public projects from substandard wages by ensuring that they receive the prevailing minimum wages. *Ferguson Electric [Co., Inc.] v. Foley,* 115 F.3d 237 (3d Cir.1997). By guaranteeing such protection, the legislation helps to insure the employment of skilled craftsmen on the job. *Keystone Chapter of Associated Builders & Contractors, Inc. v. Department of Labor & Industry* [51 Pa.Cmwlth. 586], 414 A.2d 1129 (Pa. Cmwlth.1980). The Act has been recognized as a remedial statute that is to be liberally construed to affect its purposes. *Kulzer Roofing, Inc. v. Department of*

---

**2.** The Board subsequently informed this Court of its intention not to participate in the appeal at issue.

*Labor & Industry* [68 Pa.Cmwlth. 642], 450 A.2d 259 (Pa.Cmwlth.1982). Any exceptions to its remedial provisions are to be narrowly construed. *DiLucente Corp. v. Pennsylvania Prevailing Wage Appeals Board,* 692 A.2d 295 (Pa. Cmwlth.1997). The burden of proof in a grievance proceeding is on the grievant. 34 Pa.Code § 213.8(j).

Section 5 of the Act fundamentally requires that "[n]o less than the prevailing minimum wages ... shall be paid to all workmen employed on public work." 43 P.S. § 165–5. The term "public work" is defined in [S]ection 2(5) of the Act as:

> Construction, reconstruction, demolition, alteration and/or repair work other than maintenance work, done under contract and paid for in whole or in part out of the funds of a public body where the estimated cost of the total project is in excess of twenty-five thousand dollars ($25,000), but shall not include work performed under a rehabilitation or manpower training program.

43 P.S. § 165–2(5).

Our Supreme Court has derived a four-prong test from [S]ection 2(5) to determine the Act's applicability. *Pennsylvania National Mutual Casualty Insurance Co. v. Department of Labor & Industry,* [552 Pa. 385,] 715 A.2d 1068 ( [ ] 1988) (*Penn National* ). Specifically, the *Penn National* court summarized the components of [S]ection 2(5) as follows:

> (1) there must be certain work;
>
> (2) such work must be under contract;
>
> (3) such work must be paid for in whole or in part with public funds; and
>
> (4) the estimated cost of the total project must be in excess of $25,000.

[*Id.* at 396–397,] 715 A.2d at 1074.

R.R. at 79a–80a.

Pursuant to Section 2(3) of the Act, Pennsylvania prevailing wages are not required for work that constitutes "maintenance work," defined as "the repair of existing facilities when the size, type or extent of such facilities is not thereby changed or increased." 43 P.S. § 165–2(3); *Borough of Youngwood v. Pennsylvania Prevailing Wage Appeals Board,* 596 Pa. 603, 947 A.2d 724 (2008). A "facility" has been held to be the entire building or structure or its component parts. *Kulzer.* In the matter *sub judice,* the characterization of the Project's work as either maintenance or repair work under the Act, and the Act's concomitant applicability and/or inapplicability, form the crux of this appeal.

As noted, the Borough asserts that the Project is comprised of the rehabilitation of sanitary sewer manholes, which rehabilitation includes the installation of new risers or replacement thereof, the replacement of manhole covers and frames, the replacement and installation of manhole steps or ladders, and the application of epoxy riser linings and full cement manhole linings. The Board, in its Opinion, accepted the Borough's description in its Findings of Fact. R.R. at 78a–79a. The Borough further asserts that the Project's work did not change the size, type, and extent of the manholes addressed. R.R. at 18a–19a.

The Borough argues that the Project's scope is mere maintenance work of a type similar to work that has been determined to be a lesser or minor form of repair. The Borough first attempts to distinguish this matter from the facts of *Youngwood, Kulzer,* and *Borough of Ebensburg v. Prevailing Wage Appeals Board,* 893 A.2d 181 (Pa.Cmwlth.2006), in which our Courts held that the Act applied to the work

respectively at issue therein, and upon which precedents the Board relied in its conclusions.

In *Youngwood,* in which the Supreme Court expressly stated the general axiom that maintenance work is to be considered a lesser or minor form of repair, a street resurfacing project involved the physical removal of several inches of road surface, the subsequent treatment of the roadway, and the complete resurfacing thereof with several inches of new material. The Supreme Court concluded that this work involved construction, reconstruction, demolition, alteration and/or repair work, and did not collectively involve only the minor repairs that constitute maintenance work. Thusly, the Supreme Court concluded that the resurfacing project was subject to the Act.

In *Kulzer,* this Court determined that the word "facilities" in the Act's definition of maintenance work refers to a facility which is partially overhauled or patched. Therein, a reroofing project which changed or increased the size, type or extent of the roof at issue was held to constitute repair work, and not maintenance, under the Act.

In *Ebensburg,* this Court rejected an argument that concrete sidewalk and curb replacement should be found to be exempt from the Act as maintenance. Therein, the Borough of Ebensburg planned to replace deteriorated sidewalks and curbs with in-kind replacements, and as such, asserted no change in the size, type or extent of the subject of its project.

The Borough argues that the scope of repairs in *Youngwood, Kulzer,* and *Ebensburg* are all distinguishable from, and greater than, the scope of the instant Project. The Project's scope, as characterized by the Borough, is more similar to that of pothole repair upon a street, or the fixing and sealing of a roof leak, which maintenance work does not require the removal of the whole facility. The Borough further emphasizes that in *Butler Balancing Co.,* this Court concluded that maintenance work refers to the repair of existing facilities that were operating properly but have now failed to do so. The Borough concludes that the Project's scope falls squarely under the definition of maintenance as found in *Kulzer,* and that it therefore met its burden of proving that the Project's size and scope involved merely a partial overhaul or patch of an existing facility (each manhole), and that the size, type, and extent of those existing facilities was not changed to a degree that would render the Act applicable. We disagree.

Contrary to the Borough's overly simplified assertions, non-maintenance Act-exempt work is not limited to circumstances where the facility is enlarged, reduced, or replaced with an entirely new structure. In contrast to the Borough's attempts to distinguish the precedents primarily relied upon by the Board, *Youngwood, Ebensburg,* and *Butler Balancing Co.* all can be read as applying a definition of non-maintenance work not limited by the Borough's preferred circumstantial interpretation.

In *Youngwood,* the Supreme Court relied upon multiple precedents of our Courts in concluding that the replacement of worn facilities was not Act-exempt maintenance work, even though the facilities at issue were not enlarged or altered by anything more than the industry standard of replacement materials. The road milling and repaving at issue therein was held to not constitute maintenance under the Act, with the exception of minimal patching of a street; further, the fact that some of the work, standing alone, could constitute maintenance work, was held to be not separable from the total work, and did not serve to render the entire project as maintenance work. *Youngwood,* 596 Pa. at 615–619, 947 A.2d at 731–734.

In *Ebensburg*, we concluded that the demolition and reconstruction of curbs and sidewalks at issue, which replacement was not significantly different from the facilities replaced, was not maintenance under the Act. In that case, we expressly rejected an in-kind replacement goal as insufficient, in part, as a basis to conclude that the work was mere maintenance. *Ebensburg*, 893 A.2d at 184–185.

In *Kulzer*, we held that the word "facility" not only refers to an entire structure, such as a building, but also to its component parts, such as a roof. Under that reasoning, we held that a reroofing project which changes or increases the size, type or extent of the roof is repair work subject to the Act. *Kulzer* does not stand for the proposition, as the Borough now advances herein, that the converse is true under all facts: that is, *Kulzer* does not stand for the proposition that the replacement of an old facility (including components thereof) with a new facility, *without* any change of size, type, or extent, is *per se* maintenance under the Act without regards to the specific facts—and especially, the scope—of the replacement. *Kulzer*, 450 A.2d at 261.

We agree with the Board that the Project, involving the Borough's rehabilitation and/or maintenance work upon 75–80% of the Borough's manholes [3] and including the work subsumed within that task, exceeds the partial overhaul or patching or minor repairs previously held under Pennsylvania's precedents to constitute maintenance, as discussed above. Additionally, the Board also correctly relied upon the $250,000.00 cost in characterizing the work at issue as large scale rehabilitation that does not fall within the maintenance exclusion for repairs under the Act.

Notwithstanding the Borough's argument, within its brief, that the work was maintenance because the facilities were worn and needed to be replaced periodically to enable further manhole work in the future, no actual evidence of any such anticipated or planned prospective manhole work is actually cited within the record to this matter by the Borough, and none is apparent in our review of the record. Notwithstanding that evidentiary deficiency-and, dispositively—the need for periodic repair, and/or the need for repair as preparation for further work, has been rejected as constituting a basis for Act-exempt maintenance work when the actual work performed is examined. *Youngwood*; *Ebensburg*.

The extent of the Project, in both scope and cost, renders the Project repair work subject to the Act's prevailing wage requirements under the precedents relied upon by the Board, and as cited by both parties. *Youngwood*; *Ebensburg*; *Butler Balancing Co.*; *Kulzer*. This conclusion is bolstered by the requirement that we liberally construe the Act, and by the requirement that we narrowly construe any exceptions listed therein. *DiLucente*; *Kulzer*. As such, the Board did not err.

Finally, the Borough argues that the Board erred in concluding that the evidence of record supported the conclusion that the Project's work involved a *replacement* of 75–80% of the manholes, and on that basis constituted non-maintenance work subject to the Act. In its scant argument on this issue, the Borough asserts that the evidence of record does not support the Board's Conclusion of Law, which states:

3. The Borough concedes—in its brief to this Court, and consistent with its Statement of Proposed Facts—that its "inspection of all manholes in the Borough's sewage collection system identified 75% to 80% thereof in need of rehabilitation/maintenance work ..." Borough Brief at 5; R.R. at 18a–23a.

1. The replacement of 75–80% of the manholes in the Borough's sewer system is repair work, not exempt maintenance work, and as such, the Borough's so-called Sanitary Sewer Manhole Maintenance Project is subject to the payment of prevailing wages in accordance with the Act.

R.R. at 84a. The totality of the Borough's argument[4] on this issue consists of its assertion that the record contains no evidence that any manholes were replaced; contrarily, the Borough argues, it merely explained that its inspection of its sewer system manholes identified 75–80% thereof in need of rehabilitation and/or maintenance work, consistent with its Statement of Proposed Facts and Conclusions of Law (Statement).

Our review of the record as a whole reveals that the Borough is correct that the record reveals no evidence of any manholes replaced.[5] However, the semantic imprecision of this Board error is of no moment. As noted in our foregoing analysis—without resort therein to any reliance upon any manholes replaced, but consistent with the Borough's assertions within its brief and its Statement—the Board's error on this point is harmless. The combined extent of the Project, in both scope (75–80% of the manholes within the sewer system in need of rehabilitation/maintenance work) and projected cost ($250,-000.00), renders the Project repair work subject to the Act's prevailing wage requirements under our precedents, as noted. *Youngwood; Ebensburg; Butler Balancing Co.; Kulzer.*

To the extent that the portion of the Conclusion challenged by the Borough constitutes a factual finding unsupported by substantial evidence, we emphasize as demonstrated by our foregoing address of this matter that any such erroneous semantic formulation of a finding was not a finding necessary to support the Board's adjudication. It is well established within our jurisprudence that an unsupported finding of fact which is not necessary to the adjudication merely constitutes harmless error. *Direnzo Coal Co. v. Department of General Services*, 825 A.2d 773 (Pa.Cmwlth.2003). Further, and independently dispositive on this issue, in our appellate function we will affirm a lower tribunal where the result is correct even if the reasoning is not correct, where the correct basis for the decision is apparent on the record. *Mulberry Market, Inc. v. City of Philadelphia, Board of License & Inspection Review*, 735 A.2d 761 (Pa. Cmwlth.1999).

Accordingly, we affirm.

### ORDER

AND NOW, this 30th day of June, 2010, the order of the Pennsylvania Prevailing Wage Appeals Board dated April 7, 2009,

---

4. The Borough's failure to elaborate on this argument beyond the two sentences inartfully supplied to this Court leaves us unable to precisely discern whether the Borough is arguing that the evidence does not show that any manholes have *yet* actually been replaced (as the Borough's literal language states), or that, prospectively, the manholes at issue are to be rehabilitated/maintained, as opposed to replaced. Notwithstanding this imprecision, both potential arguments are without merit.

5. The Board states, in its Opinion, that the Borough informed the Board "at argument ... that approximately 75–80% of the manholes" was intended for replacement within the Project. R.R. at 82a. However, the record reveals no actual evidence supporting this assertion (whether the Borough's argument is read as asserting no actual replacement to date, or as no intended replacement as opposed to rehabilitation/maintenance).

at Docket No. PWAB–6G–2008, is affirmed.