# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Foreman, : 
                Petitioner : 
                       : 
      v. :   No. 1025 C.D. 2017
                       :   Submitted: June 22, 2018
Unemployment Compensation : 
Board of Review, : 
                Respondent : 


BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ELLEN CEISLER, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED:  August 22, 2018**


       Claimant William J. Foreman (Claimant) petitions *pro se* for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed a Referee's determination that Claimant was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law),[1] relating to willful misconduct. For the reasons set forth below, we now affirm the Board's order.

       Berkheimers Construction (Employer) employed Claimant as a construction worker. He worked for Employer from April 2015 through February 13, 2017. On February 13, 2017, Claimant's employment ended after he

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

did not report for work on time, despite receiving a final warning regarding his attendance. Claimant subsequently filed for unemployment compensation benefits.

On February 21, 2017, the Erie UC Service Center (Service Center) determined that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Law. (Certified Record (C.R.), Item No. 4.) The Service Center determined that Claimant had been warned about his attendance, Claimant did not report to work on time, and Claimant did not show good cause for the tardiness. (*Id.*) Claimant appealed the Service Center's determination. (C.R., Item No. 5.)

On March 24, 2017, a Referee conducted a hearing. (C.R., Item No. 9.) During the hearing, Claimant testified to the circumstances surrounding his separation from employment. Both James Berkheimer (Owner), Employer's part-owner, and Melody Berkheimer, Employer's part-owner and secretary, appeared on behalf of Employer. (*Id.* at 1-2.)

At the hearing, Claimant sought to establish that he had not engaged in willful misconduct and that Employer had not given Claimant a warning regarding his attendance. Claimant stated that Owner usually contacted him on Sunday or early Monday to notify him where to report for work, giving Claimant enough time to report as expected. (*Id.* at 21.) Claimant testified that on January 30, 2017, he did not, however, receive instructions from Owner as to where he was to report for work that day. (*Id.*) Claimant explained that he texted Owner, questioning him as to why he did not receive notice of where to report to work. (*Id.* at 23.) Claimant testified that Owner explained to him that workers are responsible to contact Owner to learn when and where they are to report. (*Id.*) Claimant stated that on February 13, 2017, he slept through his alarm, and when he informed Owner, Owner

2

told him to report directly to the worksite. (*Id.* at 26.) Claimant stated that he started driving, but he did not know the exact location of the worksite. (*Id.* at 26.) Claimant testified that he texted Owner that he would call him after he started driving so Claimant could receive directions to the exact location of the worksite. (*Id.*) By the time he was able to contact Owner to receive the directions, Owner told him, "Never mind." (*Id.* at 27.)

Owner testified that on December 27, 2016, Claimant's start time was 7:00 a.m. (*Id.* at 10.) Owner stated that around 8:00 a.m., he texted Claimant to find out where he was and to inform him that this was his final warning regarding attendance. (*Id.* at 9-10.) Owner stated that Claimant did not respond to his text. (*Id.* at 11.) Owner stated that weeks later, he and Claimant exchanged texts regarding the December 27, 2016 incident, in which Claimant explained that it takes him at least thirty minutes to drive from his house to report for work. (*Id.* at 14-15.) Owner testified that on February 12, 2017, Owner texted Claimant, providing the location of the worksite and advising him to report to work the next day at 6:45 a.m. at Owner's house, to which Claimant replied, "Okay." (*Id.* at 14.) Owner stated that, on the morning of February 13, 2017, at 6:51 a.m., Claimant texted Owner that he had just woken up and "would be on the road in a minute." (*Id.*) Owner then texted Claimant to report directly to the worksite. (*Id.*) Owner testified further that by 8:47 a.m., Claimant had not reported nor contacted Owner. (*Id.*) Owner stated that he texted Claimant, "Never mind. Will mail your last check. Not going to keep allowing this to go on. Will send termination letter with check."[2] (*Id.*)

---

[2] Melody Berkheimer also testified on behalf of Employer. (C.R., Item No. 9 at 30.) Melody Berkheimer testified that upon commencement of his employment, Claimant read and signed a policy agreement, listing conditions of employment. (*Id.*) Melody Berkheimer testified further that Employer's policy agreement states that employment is at-will, includes language regarding attendance, and notes that tardiness is unacceptable. (*Id.* at 30-31.)

The Referee made the following relevant findings:

1.  [Claimant] was employed by [Employer] at $18 an hour, full-time, from April 2015 through February 13, 2017.

2.  [Employer] discharged [Claimant] for ongoing unresolved tardiness.

3.  On December 27, 2016, [Owner] was at the Sheetz warehouse between 7 and 8 a.m.

4.  [Claimant's] starting time at the Sheetz warehouse was 7 a.m.

5.  Shortly prior to 8 a.m., [Owner] was inquiring as to [Claimant's] whereabouts as he was expected to be at work at 7 a.m. and was not.

6.  In a text, [Owner] apprised [Claimant] that this was his last warning.

7.  [Claimant] did not respond to [Owner's] text, and [Owner] had left shortly prior to 8 a.m. on December 27, 2016.

8.  On February 12, 2017, [Owner] sent [Claimant] a text at 6:18 p.m., advising [Claimant] to report at [Owner's] place at 6:45 a.m. [on February 13] and divulged the worksite.

9.  On the same day, within an hour, [Claimant] texted back, "Okay."

10. On the morning of February 13, 2017, [Claimant] texted [Owner] that he had just awakened.

11. [Owner's] text back to [Claimant] advised [Claimant] to meet at the worksite.

12. Approximately 8:45 a.m. on February 13, 2017, [Claimant] reached [Owner] by phone, inquiring where the worksite was.

13. At the approximate time, [Owner] texted [Claimant], "Never mind. Will mail your last check. Not going to keep allowing this to go on. Will send termination letter with check," ending [Claimant's] employment.

4

14. It is approximately a half hour of travel from [Claimant's] home to the worksite they were working at on February 13, 2017.

(C.R., Item No. 10.) The Referee, in affirming the Service Center's determination, concluded that Claimant was ineligible for benefits under Section 402(e) of the Law, because Claimant engaged in willful misconduct. (*Id.*) The Referee reasoned, in part:

> The Referee finds [Owner's] testimony competent and credible that by a text, he had provided the claimant a final warning on December 27, 2016, regarding his inability to report to work at the time scheduled. . . . It is apparent, based upon the ongoing texts back and forth regarding the claimant's arrival or not arrival [sic] on time, [Owner] was more than lenient with the claimant's inability to arrive to work on time, even after the final warning or last warning on December 27, 2016. In fact, [Owner] appeared to be willing to allow the claimant to arrive to work late on February 13, 2017[,] until the claimant had not arrived at the site within a reasonable time after advising that he had just woken up. In fact, the Referee resolves conflicting testimony in regards to times of texts favorable to [Owner] that in fact, the texts occurred at 8:47 a.m. when [Owner] had finally given up on the claimant's inability to report for work on time.

(*Id.*)

Claimant appealed the Referee's decision to the Board. (C.R., Item No. 11.) The Board concluded that the Referee's determination was proper under Section 402(e) of the Law. (C.R., Item No. 12.) The Board adopted and incorporated the Referee's findings and conclusions, affirming the Referee's decision. (*Id.*) Claimant then petitioned this Court for review.

5

On appeal to this Court,[3] Claimant argues that substantial evidence does not exist to support the Board's findings of fact. Claimant further argues that the Board erred in concluding that Claimant engaged in willful misconduct. Claimant also argues that the Referee deprived him of his right to due process.

First, we will address Claimant's argument that the Board's findings of fact numbers 2, 7, and 14 are not supported by substantial evidence. Substantial evidence is defined as "relevant evidence upon which a reasonable mind could base a conclusion." *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, we must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any logical and reasonable inferences that can be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal if the record taken as a whole contains substantial evidence to support them. *Penflex Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986). Moreover, "[i]t is well established within our jurisprudence that an unsupported finding of fact which is not necessary to the adjudication merely constitutes harmless error." *Borough of Schuylkill Haven v. Prevailing Wage Appeals Bd.*, 6 A.3d 580, 585 (Pa. Cmwlth. 2010).

In an unemployment case, it is well settled that the Board is the ultimate factfinder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985). The Board is also empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 845 A.2d 253, 255 (Pa. Cmwlth. 2004). "Questions of credibility and resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Peak*, 501 A.2d at 1388.

Finding of fact number 2 provides: "[Employer] discharged [Claimant] for ongoing[,] unresolved tardiness." (Referee's Decision.) As to finding of fact number 2, Owner testified that on December 27, 2016, he gave Claimant a final warning about being late to work. Owner also testified that he instructed Claimant to be at Owner's house at 6:45 a.m., on February 13, 2017. Owner testified that on February 13, 2017, Claimant notified Owner at 6:51 a.m. that he "just woke up" and would "be on the road in a minute," after which Owner instructed Claimant to go to the worksite rather than Owner's house. (C.R., Item No. 9 at 14.) Owner terminated Claimant's employment when Claimant failed to report to the worksite by 8:47 a.m. As noted above, the Board, by adopting the Referee's decision, found Owner's

7

testimony to be credible, such that finding of fact number 2 is supported by substantial evidence.

Finding of fact number 7 provides: "[Claimant] did not respond to [Owner's] text, and [Owner] had left shortly prior to 8 a.m. on December 27, 2016." (*Id.*) As to finding of fact number 7, Owner testified that on December 27, 2016, following numerous instances of tardiness by Claimant, Owner sent Claimant a text, giving him a final warning regarding his attendance, and Claimant did not respond to Owner's message. (*Id.*) Again, the Board found Owner's testimony to be credible. Thus, finding of fact number 7 is supported by substantial evidence.

Finding of fact number 14 provides: "It is approximately a half hour of travel from [Claimant's] home to the worksite they were working at on February 13, 2017." (Referee's Decision.) In making finding of fact number 14, the Board appears to have relied on Owner's initial testimony that Claimant had a half hour drive or less to Owner's house, located in Imler, Pennsylvania. Claimant estimated the travel time from his home to the worksite on February 13, 2017, to be an hour. (C.R., Item No. 9 at 28.) After a lengthy discussion during the hearing among Owner, Claimant, and the Referee regarding routes, distances, and times, the Referee stated that one hour would be a reasonable amount of time for Claimant to travel from Claimant's home to the worksite (in Martinsburg, Pennsylvania) where Claimant was to work on February 13, 2017. (*Id.* at 30.) Owner agreed with the Referee's estimation of the travel time for that location. (*Id.*) Thus, we agree with Claimant that finding of fact number 14 is not supported by substantial evidence.

Our inquiry, however, does not end there. As discussed above, an unsupported finding of fact does not result in reversible error if the finding is not necessary to the adjudication. *See Borough of Schuylkill Haven*, 6 A.3d at 585. The

duration of the drive from Claimant's house to the worksite was not a necessary finding of fact. As the Board observes in its brief, the time to the worksite was not crucial in this instance, because even if the drive was one hour instead of thirty minutes, Claimant was still not at the worksite almost two hours later, after Claimant notified Owner that he had "just woke up" and would "be on the road in a minute." (Board's Br. at 9; C.R., Item No. 9 at 14.) Thus, because finding of fact number 14 was not necessary to the decision, the unsupported finding constitutes harmless error.

We next address Claimant's argument that the Board erroneously concluded that he committed willful misconduct. Whether an employee's conduct constituted willful misconduct is a matter of law subject to our review. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 368 (Pa. Cmwlth. 2008). Under Section 402(e) of the Law, Employer bears the burden of proving that Claimant's unemployment is due to his willful misconduct. *Id.* at 369. "Willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

> (a) Wanton or willful disregard of employer's interests, (b) deliberate violation of the employer's rules, (c) disregard of standards of behavior which an employer can rightfully expect of an employee, or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties and obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003). "An employer has the right to expect that his employees will attend work when they are scheduled, that they will be on time and that they will not leave work early without permission." *Fritz v. Unemployment Comp. Bd. of Review*, 446 A.2d 330, 333 (Pa. Cmwlth. 1982). "[H]abitual tardiness is adequate grounds for a finding of willful misconduct." *Id.*

9

Willful misconduct will not be found, however, where a claimant can show good cause. *Id.* A claimant shows good cause when he demonstrates that the actions which resulted in the discharge of his employment were justifiable and reasonable under the circumstances. *Id.* Generally, oversleeping does not constitute good cause. *See Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 479 A.2d 57, 59 (Pa. Cmwlth. 1984). Under the remoteness doctrine, willful misconduct will also not be found where there is an unexplained substantial delay between a claimant's misconduct and the employer's termination of employment. *Raimondi v. Unemployment Comp. Bd. of Review*, 863 A.2d 1242, 1247 (Pa. Cmwlth. 2004). The remoteness doctrine provides that "[a]n incident of willful misconduct cannot be so temporally remote from the ultimate dismissal and still be the basis for a denial of benefits." *Tundel v. Unemployment Comp. Bd. of Review*, 404 A.2d 434, 436 (Pa. Cmwlth. 1979).

Claimant argues that because Employer failed to communicate company policy and expectations, it should be held accountable for its chosen standard of conduct. Claimant argues that he was simply maintaining the status quo. The Board argues that Claimant, despite being given a warning regarding his attendance, did not report to work on time and did not provide good cause. We agree with the Board. Although Owner may have tolerated Claimant's tardiness in the past, on December 27, 2016, Owner gave Claimant a final warning about his attendance. When an employer advises an employee "that a rule will be strictly enforced, even though it had not been previously, violation of the rule . . . constitutes willful misconduct." *County of Luzerne v. Unemployment Comp. Bd. of Review*, 611 A.2d 1335, 1338 (Pa. Cmwlth. 1992) (quoting *City of Greensburg v. Unemployment Comp. Bd. of Review*, 590 A.2d 388, 390 (Pa. Cmwlth. 1991)). Thus,

10

on that date, Owner put Claimant on notice that Owner expected Claimant to be on time for work. Despite this warning, Claimant overslept on February 13, 2017, and was unable to arrive at work on time or at a reasonable time thereafter, resulting in the termination of his employment. As Claimant was tardy again after a final warning, without good cause, the Board did not err in concluding that Claimant engaged in willful misconduct. *Id. See Fritz*, 446 A.2d at 333.

Claimant cites the remoteness doctrine to further argue that Owner condoned and accepted Claimant's behavior by not issuing any discipline. Regarding Claimant's argument that Owner accepted his tardiness, the record indicates that Owner permitted reasonable tardiness so long as it did not become an issue. (C.R., Item No. 9 at 30-31.) Claimant was tardy on multiple occasions and his tardiness on February 13, 2017, followed a final warning and exceeded two hours. Regarding Claimant's argument that the remoteness doctrine applies, the record does not indicate that there was a substantial delay between Claimant's misconduct and the termination. Owner gave Claimant a final warning, and, when Claimant was late again, Owner terminated Claimant's employment that day. Thus, Claimant's reliance on the remoteness doctrine is misplaced.

Finally, we address Claimant's argument that the Referee deprived him of his due process rights. The essential elements of due process in an administrative proceeding are notice and an opportunity to be heard. *Groch v. Unemployment Comp. Bd. of Review*, 472 A.2d 286, 287-88 (Pa. Cmwlth. 1984); *Wojciechowski v. Unemployment Comp. Bd. of Review*, 407 A.2d 142, 143 (Pa. Cmwlth. 1979). Unrepresented claimants are entitled to assistance from the referee in the form of information regarding the unrepresented claimant's rights, aid during the examination and cross-examination of witnesses, and any assistance compatible with

11

the impartial discharge of the referee's official duties. 34 Pa. Code § 101.21(a). The parties are permitted to present testimony which they believe is necessary to establish their rights. 34 Pa. Code § 101.21(b). The parties are limited, however, by the discretion of the tribunal. *Id.* "An abuse of discretion occurs if, in reaching a conclusion, the law is overridden or misapplied or judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will." *Henderson v. Unemployment Comp. Bd. of Review*, 77 A.3d 699, 713 (Pa. Cmwlth. 2013).

Claimant argues that the Referee failed to meet his obligation to Claimant as an unrepresented petitioner, thereby violating his right to due process. We interpret Claimant's argument, however, to be a claim that the Referee abused his discretion. At the hearing, Claimant attempted to provide testimony by reading directly from a prepared statement. (C.R., Item No. 9 at 20-21.) The Referee requested that Claimant provide testimony but permitted Claimant to reference his prepared statement while testifying. (*Id.*) The Referee merely prohibited the verbatim reading of the prepared statement. (*Id.*) Our review of the record reveals that the Referee assisted Claimant throughout the hearing with his testimony and with questioning witnesses on cross-examination. There is nothing in the record to indicate that the Referee failed to meet his obligation to Claimant. It was within the discretion of the Referee to require Claimant to testify rather than read his prepared statement at the hearing. The Referee, therefore, did not abuse his discretion or deprive Claimant of his due process rights.[4]

---

[4] Claimant also argues that the Board erred in including in the certified record witness statements addressing Claimant's overall attendance when the Referee sustained Claimant's objection to their admission based on hearsay. Claimant asserts that these statements could have influenced the outcome and that their inclusion in the certified record was prejudicial. A review of the Referee's decision and the order of the Board reveals that these statements were not relied

Accordingly, we affirm the order of the Board.

_____
P. KEVIN BROBSON, Judge

---

upon in denying Claimant benefits in this case.  Thus, even if their presence in the certified record was in error, we would conclude the error to be harmless.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Foreman, : 
                  Claimant : 
                   : 
            v. :   No. 1025 C.D. 2017
                   : 
Unemployment Compensation : 
Board of Review, : 
                Respondent : 

# **O R D E R**

AND NOW, this 22nd day of August, 2018, the order of the Unemployment Compensation Board of Review is AFFIRMED.

 

 

                                        _____

                                        P. KEVIN BROBSON, Judge